STATE OF LOUISIANA *v.* C. C. LATHROP, Agent, &c.

Article 123 of the State Constitution, which declares that taxation shall be equal and uniform throughout the State, has not deprived the Legislature of the power of dividing the objects of taxation into classes. It merely obliges the Legislature to impose an equal burden upon all those who find themselves in the same class.

If this State has thought fit to recognize foreign charters of incorporation to the extent of permitting foreign corporations to transact business in their corporate name within our limits, the Legislature had an undoubted right to attach what conditions it thought fit to the privilege.

It is a mere confusion of ideas to put foreign corporations on the same footing of corporations which are the creatures of our own State laws, from the simple fact of their being alike corporations. It is equally unsound to claim for them the personal and constitutional rights of the citizens of the several States throughout the Union.

APPEAL from the Second District Court of New Orleans, *Lea, J.*

*Isaac E. Morse,* Attorney General, for the State:

The Act of the Legislature of 1853, to be found at page 287 of the Acts of that year, imposes a tax, or rather accords a license, to foreign banks, or their agents, to do business in this State, upon paying $1000, and the constitutionality of similar Acts has been repeatedly decided by our courts. See *State* v. *Nathan,* 12 Rob., 332; *Oakey* v. *Mayor et als.,* 1 La; *State* v. *Fullerton,* 7 R., 210; *Quesart* v. *Canonge,* 3 La., 561.

The defendants are concluded, because the tax could have been avoided by giving up their occupations, which a State has a right to forbid, or to annex such terms as they may deem proper.

The uniformity of taxation, as meant by the Constitution, applies only to classes, as $1000 to banks, $250 to brokers, $100 to billiard tables, etc., etc.

*E. Briggs* and *Benjamin, Bradford & Finney,* for defendant and appellant:

These suits are brought to enforce the payment of a State tax, under the following sections of an Act of the Legislature, passed in 1853, and found at page 285 of the Statutes of that year:

Section 13 provides that there shall be collected from each and every Insurance Company, incorporated by the laws of this State, and transacting business therein, $500, provided they have not paid a bonus to the State.

Section 14. From each and every foreign Insurance Company, not chartered by this State, and transacting an insurance business herein, or agent thereof, and from each and every foreign banker or agent thereof, excepting those doing a life insurance exclusively, $1000.

Section 15. From each and every foreign Insurance Company, not chartered by this State, and transacting a life insurance business exclusively, a tax of ten per cent. on the gross amount of premiums earned each year.

Section — provides, that in addition to the tax, a penalty not less than $250, nor more than $1000, shall be imposed for non-compliance.

The issue has been raised to test the constitutionality of this law, both as the same may be considered affected by the Constitution of the United States, and that of the State of Louisiana, the former in the second section of the fourth article, providing that, " the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States," and the latter by the 123d Article, *providing that* "Taxation shall be equal and uniform throughout the State. All property on which taxes may be levied in this State, shall be taxed in proportion to its value, to be ascertained by law. No one species of property shall be taxed higher than another species of property of equal value, on which taxes shall be levied; the Legislature shall have power to levy an income tax, and to tax all persons pursuing any occupation, trade or profession."

We oppose the right of the State to exact from us a larger contribution than that imposed on our occupation as a class—and we oppose this right upon the ground that we are taxed under the latter clause of the article cited, which authorizes a tax on persons pursuing trades; that this clause is controlled by that

which calls for equality in taxation, and that when the Legislature undertakes to make our liability depend upon accidents other than the value and species of the property subject to taxation, or the nature of the trade, she transcends the power delegated by the Constitution in this behalf, and that the tax is to this extent void.

This being premised, we will proceed to examine how far the authorities bear us out in our position.

The Supreme Court in the *Louisville Railroad Company* v. *Letson,* 2 Howard, p. 558, in which it was attempted to set aside the jurisdiction of the Federal Court, on the plea that stockholders of the institution *were not citizens of the State* in which the suit was brought, uses the following language : " But there is a broader ground upon which we desire to be understood, upon which we altogether rest our present judgment."

" In the *Bank* v. *Devaux,* the case most relied upon by the plaintiffs in error, this ideal existence is considered as an inhabitant when the general spirit and purposes of law requires it." " If it be so for the purposes of taxation, why is it not so for the purposes of a suit in the Circuit Court of the United States."

In the *Providence Bank* v. *Billings,* 4 Peters, 562, Chief Justice Marshal says : " The great object of incorporation is to bestow the character and properties of individuality on a collective and changing body of men."

In the *Bank of Augusta* v. *Earle,* 13 Peters, the court held, the following doctrine, p. 528. "It is very true that a corporation can have no legal existence out of the State boundaries of the sovereignty by which it was created." " But although it must live and have its being in that State only, yet it does not by any means follow that its existence will not be recognized in other places."

" The comity thus extended to other countries is no impeachment of sovereignty. It is the voluntary act of the nation by which it is offered, and is inadmissable when contrary to its policy or jurisprudence, or its interests."

It is nothing more than the admission of the existence of an artificial person, created by the law of another State, and clothed with the power of making certain contracts. It is but the usual comity of recognizing the laws of another State."

In common with the cases cited, and a multitude of others, this case establishes our position, that a corporation, foreign or domestic, is, in the contemplation of the law, a person. *Ens rationis. Personæ vice fungitur.*

So far, then, as the companies or agencies incorporated by our sister States are concerned, we say that the law is in violation of the Constitution of the United States, which, in the article cited, provides that " the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States."

The meaning of this article has been explained by Mr. Justice Washington, in *Corfield* v. *Coxyell,* 4 Wash. C. C. R. 380; and we again have to request the attention of the court to this exposition. " The enquiry is, what are the privileges and immunities of citizens in the several States? " What these fundamental principles are, it would perhaps be more tedious than difficult to enumerate. They may be comprehended under the following general heads"— and *inter alii* " exemption from higher taxes or impositions than are paid by the other citizens of the State.

When, then, the Legislature of this State says that insurance companies chartered by this State shall pay five hundred dollars tax, and those chartered by other sovereignties, our sister State included, when acting through their officers, shall pay one thousand, does she not in other words say, that the citizens of this State shall be entitled to privileges and immunities from which they exclude the citizens of other States? Is this an exemption from higher taxes or impositions than are paid by the other citizens of this State ? The Legislature has recognized the comity which admits the corporation to exist within the State, and has taxed it, as she had a right to do ; but she has done more, and to this extent we conceive it is most clear her legislation is without effect.

The only case we have found directly militating against the position we have taken, is that of the *Commonwealth* v. *Milton,* 12 Ben Munroe, in which the Court differs from Mr. *Justice Washington,* in the views he takes of the privileges and immunities referred to in the Constitution of the United States, argues a point conceded, that the charters of foreign corporations have no effect further than comity permits, and concludes that there is nothing in the Constitution of

STATE
v.
LATHROP.

the United States or in that of Kentucky which prevents the distinction in that State against which we are striving here. To the which we would reply—that we think Mr. Justice *Washington* takes by far the most correct and liberal view of the federal intendment, and that although from an expression in the opinion now referred to, one would infer that a provision similar to that in the Constitution of Louisiana, was in that of Kentucky, it is not so. We have carefully examined that of 1799, and the one now in force, and have ascertained that the provision is in neither.

In *Wiley* v. *Palmer*, 14 Alabama, R. 627, the whole doctrine is reviewed, and it was decided that an act imposing a tax of two dollars on all slaves, the property of non-residents, and one-half the amount on the slaves of residents, was in contravention of the second section of the Federal Constitution, was void, and that the tax pro tanto could not be collected.

But apart from the ground we have been examining, and which would, of course, protect only those charters which were granted by the several States, we have to urge the restrictions upon taxation in our own Constitution, which we have already set out, and which we conceive, it is clear, would cover all the charters, whether strictly foreign or emanating from State sovereignties.

We are not at all disposed to do battle with the abstract right inherent in all governments to tax the subject, but, on the contrary, however annoyed by its practical illustration, concede in full the right as a necessary element, without which government could not possibly exist. But there is a wide difference between this power as it exists in the rule of an Indian Raja and in the government of the State of Louisiana. With the former it is absolute; with the latter, it is conceded by the party to be taxed, coupled with conditions, and the right to tax is to be executed as the dictating power has provided.

Now what has the Constitution said upon this subject. It-says :

Taxation shall be equal and uniform throughout the State.

All property on which taxes may be levied in this State, shall be taxed in proportion to its value.

No one species of property shall be taxed higher than another species of property of equal value, on which taxes shall be levied.

The Legislature shall have power to levy an income tax, and to tax all persons pursuing any occupation, trade or profession.

Now, surely, when the Constitution so carefully provides in its enunciation of the general principle of taxation, and in the taxation referred to in the second and third clauses of the Article, that it shall be equal, it cannot be contended that the taxation contemplated in the two last clauses should be exempt from the like condition :—That all taxation shall be equal.

That all taxes on houses, slaves and every kind of property shall be equal.

But that taxes on income or occupations shall or may be unequal.

It would be hard, it seems to us, to escape the syllogism which would subject the latter like the former, to the same rules of equality.

It is no answer to the difficulty to say that this condition is stipulated in favor of the citizens of the State, and that we are no parties to it. We say the Legislature has no power to impose a tax but on the basis stipulated, when we are cal'ed upon to pay, we have the right in common with the world, to ask with Shylock:

"Is it so nominated in the bond ? "

and that if the form in which the tax is levied be not found therein we are not bound to pay it.

We have no objection to urge against the tax imposed, so long as all insurance companies are called upon to pay it ; but we do object to pay five thousand dollars for the privilege of carrying on a trade or occupation which our neighbor is allowed to follow on the payment of five hundred; and we object to it, because we think the Legislature exceeded the power delegated, in imposing upon us this obligation.

In the *Portland Bank* v. *Althorp*, 12 Mass., 259, the court says : " Taxes of this sort must, undoubtedly, be equal : that is, they must operate upon all persons who exercise the employment which is so taxed."

That the provision in the Constitution of Louisiana is the idle enunciation of a principle which is elementary in the right to tax, may surely admit of doubt. We doubt that this principle is elementary. It certainly is not universally so, nor is it clear that it is so even where constitutional government is the taxing power. In *LeBreton* v. *Morgan*, 4 U. S., 142, Judge Porter says : " The Con-

stitution of this State having affixed no limits to the exercise of the power of taxation by the Legislature, it is difficult to suppose even a case in which the exercise of that power could be considered unconstitutional, or properly become the subject of judicial interference."

In *Oakey* v. *Mayor et al.*, 1 La., p. 1, the same Judge citing the Massachusetts case, we have ourselves already cited, says : " In our Constitution there is no such provision as that then existing in Massachusetts, which required the Legislature to levy proportionate taxes."

In the *State* v. *A. M. Nathan*, 12 Robinson, 332, a suit instituted to test the constitutionality of a tax on money and exchange brokers imposed by the Legislature in the year 1842, Judge Martin says : "The General Assembly of this State is vested with all the legislative powers, even including that of unequal and partial taxation, although the State Constitution does not grant it in express terms. Its attributes differ in this respect from those of Congress, which are limited to those actually granted."

This was the judicial interpretation of the Constitution, and the power of the Legislature, in reference to taxation, anterior to the amendments adopted by the Convention, which qualified and curtailed the authority of the Legislature in this behalf. It is surely fair to infer, that the article upon which our objection is grounded was instituted, not as the mere enunciation of these imperial prerogatives, but with the express view to their curtailment.

In the *Second Municipality* v. *Duncan*, 2 Ann., 183, the Supreme Court held that this change did not affect municipal taxation, and says, " Nor, does it follow, that because article 127 of the Constitution does not apply to municipal taxes, the right to lay taxes is arbitrary and without restraint ? That right is always limited by the principles on which our institutions are founded, and which the Constitution recognizes as sacred. The Supreme Court of Kentucky, in the case of the *City of Louisville* v. *McQuillan's Heirs*, 6 Dana, 516, in answer to an argument pressed at bar, that the right of the city to tax was unlimited, has presented this subject in a very clear light. "Amongst these political ends and principles, equality, as far as practicable, and security of property against irresponsible power, are eminently conspicuous in our State Constitution. Although there may be a discrimination in the subjects of taxation, still persons in the same class, and property of the same kind, must generally be subjected alike to the same common burthen."

In *Lafayette* v. *Cummins*, 3 An., 674, the court says—" The Statute of 1846 (authorizing the City Council of Lafayette to tax) imports no prohibition of discrimination on the objects of taxation, which is an administrative question of great importance ; and where the tax is laid on persons in the same class, that is, all those exercising certain trades, occupations, or professions, we know of no instance in which it has been held otherwise than legal and valid."

In the case, *Succession of Benjamin Poydras de Lalande*, OpinionBook, No. 23, p. 592, this Court lays down the following doctrine as applicable to the article in the Constitution of this State. "The rule proclaimed in this article is but the reiteration of a great fundamental principle, which lies at the foundation of all well-organized governments. Taxation must be uniform and equal ; and while we are disposed to give to it its fullest force and effect, we are unable to discover in what it is repugnant either to the act of 1842, or the act of 1850. To be uniform, taxation need not be universal ; certain objects may be made its subjects, and others may be exempted from its operation ; certain occupations may be taxed for a greater amount, and others for a less ; but as between the subjects of taxation in the same class, there must be an equality."

A review of the foregoing cases would show that whilst the taxing power prior to the Constitution of 1845 was considered untrammeled by constitutional restraint, a certain political convenience, derived from sources assumed and asserted to exist, though somewhat mythic in their nature and difficult to find, restrained this power within due and proper limits, and that the system we insist upon, taxation by classification, was even then the admitted rule. If this be so, it is surely made more imperative by our amendment, which textually provides that this principle shall be observed.

Is it observed when taxation is imposed, not with reference to occupation, trade or profession, but to accident, creating subdivisions which might be established to any extent at the caprice of the Legislature ?

We are utterly at a loss to find either reason or policy to warrant the distinction established by the statute. The enormous amounts insured at such moments are covered by re-insurance, and the policy, if opened in an office chartered by the State, is divided amongst all who are willing to take a part, and in whose ability to pay, in case of loss, the original insurer has sufficient confidence. The history of the past has shown how rare it is that insurance offices eventually end in profit to the stockholders, and the attempt to drive from the city all insurers other than one or two pet institutions chartered by the State, would but accelerate the fate of those whose interests the move was intended to cover and protect. Merchants want not only to insure, but to be paid when loss occurs, and it needs but a slight acquaintance with the nature of the business here, to feel satisfied that the burning of a press would, but for the division of risk referred to, drive the strongest into bankruptcy.

BUCHANAN, J. This is a suit for one thousand dollars tax on a foreign insurance company not chartered by this State, and transacting business therein. The tax is imposed under an Act of the Legislature, approved 30th April, 1853. It is resisted on the ground that the same statute imposes a tax of but five hundred dollars upon an insurance company incorporated by the laws of this State, and transacting business therein. The defendant contends that the distinction made between these two classes of insurance companies, is a violation of Article 123 of the State Constitution, which declares that taxation shall be equal and uniform throughout the State.

The provision of the Constitution relied upon by defendant has not deprived the Legislature of the power of dividing the objects of taxation into classes. It merely obliges the Legislature to impose an equal burden upon all those who find themselves in the same class. Now, the class of insurance offices liable to the thousand dollar tax under the statute in question is entirely different from that which is liable to the five hundred dollar tax. If this State has thought fit to recognize foreign charters of incorporation to the extent of permitting foreign corporations to transact business in their corporate name, through agents, within our limits, the Legislature had an undoubted right to attach what conditions it thought fit to the privilege. It is a mere confusion of ideas to put those foreign corporations on the same footing with corporations which are the creatures of our own State laws, from the simple fact of their being alike corporations. It is equally unsound to claim for them the personal and constitutional rights of the citizens of the several States throughout the Union. *Commonwealth* v. *Milton*, 12 Ky. Rep. 212.

Judgment affirmed, with costs.