BACON *v.* BOARD OF STATE TAX COMMISSIONERS.

1. TAXATION—FOREIGN CORPORATIONS—SHARES OWNED BY RESIDENTS.

Shares of stock in a foreign corporation, owned by a resident of Michigan, may be taxed to him in this State, though the corporation is taxed in the State of its domicile upon all of its capital stock, and though the owners of such stock are not required in such State to pay any taxes thereon.

2. SAME—CONSTITUTIONAL LAW—FULL FAITH AND CREDIT.

Such taxation is not in contravention of article 4, § 1, of the Constitution of the United States, which provides that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," since that provision is not to be given an effect which would forbid each State to legislate with reference to its own jurisdiction.

3. SAME—UNIFORMITY—SELECTION OF OBJECTS OF TAXATION.

The fact that shares of stock in domestic corporations whose property is taxed in this State are by 1 Comp. Laws 1897, § 3831, subd. 7, expressly exempted from taxation, does not render the provisions of subdivision 9, that shares in foreign corporations shall be taxed, obnoxious to article 14, § 11, of the State Constitution, which requires general taxes to be levied according to a uniform rule; it being competent for the legislature to place domestic corporations and foreign corporations in different classes for the purpose of taxation.

4. SAME—INTERPRETATION OF STATUTES.

The tax law of 1889 provided for the taxation of personal property belonging to inhabitants of this State, situate without the State, and of shares in foreign corporations owned by inhabitants of the State. In re-enacting these provisions, in 1893, the word "citizens" was substituted for "inhabitants" in the clause relating to foreign stocks. *Held,* that the contention that the change was made for the purpose of reaching stocks owned by nonresident citizens of the State, and that, the effect being to exempt aliens and citizens of other States here residing, the statute violated the constitutional requirement of uniformity, could not be sustained, since the word "citizen" was evidently used in its common meaning, as synonymous with "inhabitant" or "resident."

GRANT, J., dissenting.

*Mandamus* by Thaddeus W. Bacon to compel the board of State tax commissioners to vacate an assessment on certain shares of stock in a foreign corporation. Submitted October 30, 1900. Writ denied February 27, 1901.

*Avery Bros.* (*Joseph Walsh,* of counsel), for relator.

*Horace M. Oren,* Attorney General, for respondent.

LONG, J. Relator is a citizen of this State, a resident of the city of St. Clair, and the owner of a number of shares of stock of the New York Central & Hudson River Railroad Company, of the State of New York. He is assessed upon the tax roll of said city $50,000 for personal property. This assessed valuation includes the shares of stock held by him in said railroad company. The real estate of said company, and its capital stock in excess of the real estate, are taxed in the State of New York. The stock owned in the State of New York is not taxed. The relator appeared before the board of State tax commissioners at a meeting held in said city on August 20, 1900, and made application to have said assessment reduced by reason of the fact that, as the property and franchises of said corporation are taxed in the State of New York, the stock is not taxable in this State. The board refused to reduce said assessment, and the matter is presented to this court upon petition for *mandamus* to compel such reduction.

The questions raised by the parties involve the construction of certain subdivisions of section 3831, 1 Comp. Laws 1897. Those provisions are as follows:

"For the purposes of taxation, personal property shall include: * * *

"5. All goods, chattels, and effects belonging to inhabitants of this State, situate without this State, except that property actually and permanently invested in business in another State shall not be included. * * *

"7. All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself, or when the personal property is not taxed. * * *

"9. All shares in foreign corporations, except national banks, owned by citizens of this State."

It is contended by counsel for relator:

1. That the statute, in providing for taxation on foreign stocks, is unconstitutional, in that it is not uniform and equal. The argument is that because, under this statute, an individual holding stock issued by a domestic corpora-

tion which pays taxes on its capital stock is not taxed on such individual stock so held by him, the same rule must be applied to persons owning stock in a foreign corporation whose capital stock is taxed. One owning shares in a corporation is substantially the owner of an aliquot part of the property of the corporation, although the legal title to such property is vested in the corporation, and not in him. The value of his shares can never vary greatly from the value of the property they represent. This is as true of shares of stock in foreign corporations as of those in domestic corporations. The law taxes both, with the exception of cases where the property of the corporation is taxed in this State. Stated thus (and this is the effect of subdivisions 7 and 9, taken together), there is no want of uniformity of method or rule; and there is no impropriety in thus stating it, for the Constitution cannot be supposed to have been framed with a view to what other States might do. It has no jurisdiction over corporations of other States; and when its citizens embark in foreign corporate enterprises, and pay money to them, taking certificates of stock therefrom, this State cannot tax the property of such corporation in its possession outside of this State. Yet, substantially, its citizens have as much property as before; and, if not taxed in another State, there is no reason why it should not be taxed here, like the stock of domestic corporations. The State has said, in effect, to its citizens, "If you invest your property in corporations, you shall be taxed upon the shares, except where the property of the corporation is taxed to the corporation by this State." We may doubt the abstract justice of this; but we believe the State has the power to tax the shares of residents in foreign corporations, and that this power is not affected by the action of another State in imposing taxes upon the corporations. Michigan owes much to the investment of foreign money in her corporations which she taxes, and it is probably to her interest that moneys so invested be not taxed again elsewhere; but she is powerless to prevent it, though it goes without saying that the

property, in effect, is taxed twice. There are the questions of policy and abstract justice involved, both protesting against double taxation; but the legislatures of the States are judges of both policy and propriety, so long as the constitutions have not forbidden it, and the weight of authority supports the claim that, in the absence of clear and express prohibition, they have not.

In the case of *Youngblood* v. *Sexton*, 32 Mich. 406 (20 Am. Rep. 654), a tax was objected to as violating the constitutional rule of equality and uniformity. It was said:

"If the precise point here is that the tax is unequal and unjust because it is not levied in proportion to the business done, then the objection is without force. It may possibly be true that an apportionment according to the business done would have been more just, but a question of this nature concerns the legislature, and not us. Courts cannot annul tax laws because of their operating unequally and unjustly. If they could, they might defeat all taxation whatsoever, for there never yet was a tax law that was not more or less unequal and unjust in its practical workings.  *  *  *  Apportionment of taxation is purely a legislative function."

In *Insurance Co.* v. *City of New Orleans*, 1 Woods, 85, 89 (Fed. Cas. No. 7,052), it was said, quoting from *State* v. *Lathrop*, 10 La. Ann. 402:

"This is a suit for $1,000 tax on a foreign insurance company, not chartered by this State, and transacting business therein.  *  *  *  It is resisted on the ground that the same statute imposes a tax of but $500 upon an insurance company incorporated by the laws of this State and transacting business therein. The defendant contends that the distinction made between these two classes of insurance companies is a violation of article 123 of the State constitution, which declares that 'taxation shall be equal and uniform throughout the State.' The provision of the constitution relied on by defendant has not deprived the legislature of the power of dividing the objects of taxation into classes. It merely obliges the legislature to impose an equal burden upon all those who find themselves in the same class."

This doctrine is supported by *Hughes* v. *City of Cairo*, 92 Ill. 339; *Lee* v. *Sturges*, 46 Ohio St. 153 (19 N. E. 560, 2 L. R. A. 556); *Sturges* v. *Carter*, 114 U. S. 511 (5 Sup. Ct. 1014); *Graham* v. *Township of St. Joseph*, 67 Mich. 652 (35 N. W. 808).

We think the determination of this question is for the legislature, and not subject to review by the courts. It appears from the statute itself that shares in foreign corporations are taxed in this State but once, and the shares in domestic corporations or their representatives are also taxed. The question of the effect of statutes of foreign States cannot be considered, nor can such statutes have any effect in this State upon the question of the uniformity of the rules of taxation. The stock has a *situs* in this State, and is subject to the control of the legislature for the purpose of taxation.

2. It is further contended by counsel for relator that the law of 1893 (section 3831, 1 Comp. Laws 1897) has an element of doubt and uncertainty in it as to the intent of the legislature to include such property for taxation in this State, as it is provided by subdivision 5 that personal property actually and permanently invested in any other State shall not be included, while subdivision 9 includes for taxation all shares in foreign corporations owned by citizens of this State, except national bank stocks. It is also contended that it was the intent of the legislature to provide taxation upon such property against citizens of the State; that it is evident the legislature used the word "citizen" in its restricted sense, and that the act was intended to provide taxation against a citizen of the State residing in New York or Ohio, or any other place outside the State,—one who returns for the purpose of voting at elections, but resides for the most part in foreign jurisdictions; that the word "citizen," as used in this statute, was intended to reach a large class of persons who are citizens of this State and reside elsewhere; that, under the construction contended for by the respondent, all citizens who are nonresidents of the State

would escape taxation. It is claimed that the construction contended for by relator is made apparent from the change made in 1893 from the former provisions of the statute; that the statute of 1889 (Act No. 195) provided, as did the law of 1885, for taxation upon all ships, boats, and vessels belonging to *inhabitants* of this State, whether at home or abroad, and all goods, chattels, and effects belonging to *inhabitants* of this State, situate without this State, and all shares in foreign corporations, except national banks, owned by *inhabitants* of this State; that the law of 1889 used the word "*inhabitant*" in providing for taxation upon personal property, while in the enactment of 1893 this word was eliminated, and the word "*citizen*" substituted, when referring to stock in foreign corporations; that section 3831, 1 Comp. Laws 1897, by subdivision 5, provides for taxation upon all goods, chattels, and effects belonging to inhabitants of this State, situate without this State, except that property actually and permanently invested in business in any other State shall not be included; that the word "inhabitants," as used in these statutes, reaches all persons who are residents of the State, while the word "citizens" as used is intended to reach a class of persons who are citizens of the State and reside elsewhere; that by this construction all citizens of the State who are nonresidents of the State could be taxed under this law, while, if it only provided that inhabitants of the State should be taxed, then nonresident citizens would escape taxation; and it is thus insisted that the change made in 1893, by striking out the word "inhabitant" and inserting in lieu thereof the word "citizen," was made to meet this situation. It is claimed that, under this construction, a rule of taxation is provided which is not uniform, as it does not operate upon all of this kind of property alike, and whether it is taxable or not depends upon who is the owner of it. It is claimed that the statute does not provide that all foreign stocks shall be taxed; that it provides only for the taxation of stocks owned by citizens of the State.

We think this contention has no force, and that it does not accord with the plain provisions of subdivision 9. We think the legislature intended to use the word "citizen" as synonymous with "inhabitant" or "resident." As was said in *McKenzie* v. *Murphy*, 24 Ark. 155, 159:

"The word 'citizen' is often used in common conversation and writing as meaning only an inhabitant, a resident, of a town, State, or county, without any implication of political or civil privileges."

In *State* v. *Trustees of Delhi Township*, 11 Ohio, 24, 27, it was said:

"Here a question is raised as to the meaning of the word 'citizen' as used in this connection. That this word does not always mean one and the same thing is clear. Thus we speak of a person as a citizen of a particular place, when we mean nothing more by it than that he is a resident of that place. When we speak of a citizen of the United States, we mean one who was born within the limits of, or has been naturalized by the laws of, the United States. It can hardly be believed that the legislature, in using the word 'citizen' in this statute, intended to make a distinction between native or naturalized citizens and resident aliens."

We think it was not intended by the legislature to limit the word to persons who are actually citizens in a political sense. A liberal construction must be given to the tax laws for public purposes. Mr. Justice GRANT said in *Auditor General* v. *Hutchinson*, 113 Mich. 245 (71 N. W. 514): "Tax laws should be liberally construed." See, also, *U. S.* v. *Hodson*, 10 Wall. 395; *U. S.* v. *Taylor*, 104 U. S. 216.

3. One other question is raised. It is claimed that the taxation of relator's stock is in contravention of section 1, art. 4, of the Constitution of the United States, which provides that "full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State." This contention cannot be sustained. In *Bonaparte* v. *Tax Court*, 104 U. S. 592, the question the court was asked to decide was whether the

registered public debt of one State, exempt from taxation by the debtor State, or actually taxed there, was taxable by another State, when owned by a resident of the latter State. The court said:

"We know of no provision of the Constitution of the United States which prohibits such taxation. * * * It is insisted, however, that the immunity asked for arises from article 4, § 1, of the Constitution, which provides that full faith and credit shall be given in each State to the public acts of every other State. We are unable to give such an effect to this provision. * * * While the Constitution of the United States might have been so framed as to afford relief against such a disability, it has not been, and the States are left free to extend the comity which is sought, or not, as they please."

It was further remarked in the case that:

"No State can legislate except with reference to its own jurisdiction. One State cannot exempt property from taxation in another."

In *Bradley* v. *Bauder*, 36 Ohio St. 28, 36 (38 Am. Rep. 547), it was said:

"The constitutional power to tax shares of stock owned by our citizens in corporations located without the State does not depend on whether the capital of the corporation is or is not taxed in the State where the corporation is created. The power is the same whether the capital of the corporation is there taxed or not; otherwise, the power of taxation conferred by the constitution would be made to depend upon the operation of laws of a foreign jurisdiction,—a proposition so obviously ill-founded that the moment it is stated its falsity becomes apparent."

See, also, *Dwight* v. *Mayor, etc., of Boston*, 12 Allen, 316 (90 Am. Dec. 149), where the same doctrine is laid down.

Cooley, in his work on Taxation, lays down the same rule. He says:

"The shares owned by residents in foreign corporations may be taxed to the owners, even though the corporations themselves are taxed in the jurisdiction where their operations are carried on." Cooley, Tax'n (2d Ed.), 57.

The writ must be denied.

MONTGOMERY, C. J., HOOKER and MOORE, JJ., concurred with LONG, J.

GRANT, J. (*dissenting*).   The conceded facts in this case are:   The New York Central & Hudson River Railroad Company is a corporation organized under the laws of New York.   Its property, personal and real, is situated in that State.   It has no property subject to taxation in Michigan.   All its property, including its capital stock, is taxed in the State of New York.   Its tax in that State for the year 1900 was $2,345,526.08, which it paid.   This includes the tax on its capital stock, which tax amounted to $237,815.71.   The total tax amounted to 2 per cent. on its entire capital stock, and to 11.4 per cent. on its net income.   The relator is a citizen of this State, residing in the city of St. Clair.   He owns a number of shares of the capital stock of that company, for which he holds its certificate.   This stock has been assessed to him in St. Clair, presumably at its cash value.   The rate of taxation in that municipality is about 3 per cent. on the assessed value of property.   The Constitution of Michigan provides that:

"The legislature shall provide an uniform rule of taxation, except on property paying specific taxes; and taxes shall be levied on such property as shall be prescribed by law."   Article 14, § 11.

The statute of Michigan provides that:

"For the purposes of taxation, personal property shall include:   *   *   *

"5. All goods, chattels, and effects belonging to inhabitants of this State, situate without this State, except that property actually and permanently invested in business in another State shall not be included.   *   .*   *

"7. All shares in corporations organized under the laws of this State, when the property of such corporations is not exempt, or is not taxable to itself, or when the personal property is not taxed.   *   *   *

"9. All shares in foreign corporations, except national banks, owned by citizens of this State."   Section 3831, 1 Comp. Laws 1897.

Can this taxation be sustained under the above provision of the Constitution of Michigan? Double taxation is unequal taxation, under our Constitution. Were this railroad company a Michigan corporation, with all its property in Michigan, and assessed at its cash value, and taxes paid thereon, and were its stockholders in Michigan again taxed upon the capital stock owned by them at its cash value, this would be double taxation, and therefore unequal, and clearly prohibited by the Constitution. To illustrate: The real estate of the Calumet & Hecla Mining Company, situated in Houghton county, is assessed at $55,274,920; its personal property, at $6,550,000; making a total of $61,824,920. Assuming that the rate of taxation in Houghton county, including State, county, and municipal, amounted to 3 per cent., the corporation would pay the present year taxes amounting to $1,854,747.60. If the stockholders in Michigan were again assessed upon the cash value of their stock, their property, clearly, would be taxed twice; for the value of their stock is represented by the value of the property of the corporation. That this would be in violation of the Constitution is clear. The stock has no value not based upon the value of its property. Furthermore, the stockholder in either event pays the taxes. It matters not what you choose to call the stock; it is but the evidence of his property. The stockholders are the owners in fact of all the property of the corporation. All profits made belong to them. The surplus, upon the winding up of its affairs, belongs to them. Although the taxes levied may be paid out of the earnings of the company, and out of its treasury, they are just as much paid by the stockholder as though he had been assessed his pro rata share for the payment of the taxes. This was distinctly held in *People* v. *Badlam*, 57 Cal. 594. The constitution of that State provided that " all property *in the State*, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law." Is there any difference in meaning between that provision and our

own, which declares that taxation shall be equal? Taxation in proportion to value means equality, and equality means taxation in proportion to value.

So it has been held that the taxation of the property of a bank and of its capital stock at the same time is double taxation, forbidden by the organic law found in the declaration of rights, and which reads: "Every person in the State, or person holding property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in rea or personal property." *Frederick County Com'rs* v. *Farmers & Mechanics' Nat. Bank*, 48 Md. 117.

See, also, *City and County of San Francisco* v. *Mackey*, 21 Fed. 539.

Where the law authorizing the formation of corporations provided for the payment of a tax to the State, and exempted them from any further tax or burden upon them, it was held that the exemption from taxation included exemption from taxation of the stock in the hands of shareholders. *Gordon* v. *Appeal Tax Court*, 3 How. 133; *State* v. *Branin*, 23 N. J. Law, 484.

The constitution of New Hampshire provides, "No statute provision shall be so construed as to subject any stock to double taxation." The law of that State provided for assessing stock in corporations located out of the State, to individuals owning the same. Under that act the municipal authorities assessed stock in the Michigan Central Railroad Company to a citizen of New Hampshire. By the charter of the Michigan Central Railroad Company, its capital stock was taxable in Michigan; and the tax so provided was to be in lieu of all taxes, charges, or exactions by virtue of any law of the State. The court held that this stock was not taxable in New Hampshire. *Kimball* v. *Milford*, 54 N. H. 406.

In New York the provision of their statute, "that the shareholder shall not be taxed in respect to his shares in any corporation whose capital stock is taxed," was held to apply to corporations organized in other States, where

their property and business were located.    *People* v.
*Commissioners of Taxes of New York*, 4 Hun, 595.
I quote the following language from that case:

"Such corporations are taxable, and we must presume,
in the absence of proof, that taxes in their respective
home States are duly assessed and collected upon their
capital stock or property. The stocks in such corporations,
held by individuals here, are simple representatives of
capital or property employed in business in other States,
the title of which is vested in and controlled by the artifi-
cial person created by and residing in such States. They
represent an interest which is or may become a member-
ship in the corporation, and evidence of a right to partici-
pate in divided profit, and in the ultimate dividend of
surplus after the payment of all debts and obligations of
the corporation. The stock certificates are not themselves
the property, but are evidences of the rights just men-
tioned, to be possessed, enjoyed, and enforced under and
in conformity with the laws of the State which created
the body corporate. The property of the corporation,
whether real or personal, in which these certificates of
legal or equitable rights are outstanding, is not '*within
this State*,' which, by the general statute, is the test of
taxability; but, if any portion of it were, that fact would
not affect the question now before us, for then, under our
statutes, it would be taxable here, because of its *situs*, to
its possessor or owner, but not to the mere holders of
stock in the corporation."

That case was affirmed by the court of appeals in a
memorandum opinion, found in 62 N. Y. 630.

Justice Cooley says: "It is a fundamental maxim in
taxation that the same property shall not be subject to
a double tax, payable by the same party, either directly or
indirectly." Cooley, Tax'n (2d Ed.), 227.

Justice Champlin, in *Attorney General* v. *Sanilac
County Sup'rs*, 71 Mich. 26 (38 N. W. 642), said:

"The rule of uniformity forbids that taxation should
be double. No person can be twice assessed upon the
cash value of the same property, to defray a public
burden."

This opinion was concurred in by Justices Morse and
Long.

Justice CAMPBELL, in the same case, said:

"No tax law can be valid which does not provide for securing such uniformity. Of course, it is not necessary to attempt impossibilities. Uniformity, as well as value, may involve some exercise of opinion or discretion, and cannot be absolute. But a law which does not provide directly for satisfying these conditions as far as practicable cannot be a valid exercise of the taxing power, and cannot be upheld as conforming to the Constitution. * * * It cannot be possible to have double taxation valid under our Constitution. It not only destroys uniformity of burdens, but in so doing involves the other considerations referred to."

It is not contended that, under the Constitution of this State, the property of a domestic corporation and the stock of the shareholders, whose value depends upon the value of its property, can be taxed. But it is contended that, if the corporation and its property are located in another State, then the evidence of property known as "stock" can be assessed and taxed to the individual shareholders residing in Michigan. That is the important question in this case. Let us suppose that the Calumet & Hecla Mining Company were located across the boundary line in Wisconsin, and its property assessed the same as it now is in Michigan; would the assessment of Michigan stockholders at the cash value of their stock be any less double taxation, or any less unequal, than if located within the State? It must be borne in mind that all the property of the corporation would be taxable in Wisconsin, and nowhere else. Or suppose that the Upper Peninsula were organized into a separate State; it would then follow, if respondent's contention be correct, that all the stock of the shareholders in the old State would at once be taxable. Is it possible that the framers of the Constitution, and the people who adopted it, supposed that they were adopting a Constitution capable of such oppression and injustice? I cannot so hold, even if there are decisions of other courts to the contrary. There are occasions when precedents from other tribunals, however learned they

may be, should not be followed. The value of railroad, mining, and manufacturing corporations is based upon their property, which is taxed where they are located. There is no more justice in taxing the stockholder upon his stock in such a corporation located in another State than there would be in taxing the stock in the hands of a stockholder of a domestic corporation. It is as unjust and unequal in the one case as it is in the other. I cannot sanction that fiction of the law which separates the stock, calls it personal property, and assesses it, regardless of the fact that all the property which the stock represents has been assessed by the authorities where its property is located. It is common knowledge that all such corporate property is, and always has been, assessed in the State in which it is located. It was common knowledge when our Constitution was framed and adopted.

Counsel for respondent cites Cook on Stock and Stockholders: "Aside from constitutional restrictions, it unquestionably is within the power of the State to levy not only a double tax, but even a treble or quadruple tax, if it so chooses." As authority for the text the author cites *Toll-Bridge Co.* v. *Osborn*, 35 Conn. 7. His comment upon this case is: "Evidently corporations were not popular in Connecticut in 1868, except for taxation purposes." 1 Cook, Stock & S. § 567, and note. Such a result is not possible under the Constitution of Michigan.

One more illustration may not be out of place: Ten men, five living in Indiana and five in Michigan, are engaged as copartners in a manufacturing business located in Indiana. The real estate and all the personal property are in Indiana, and are there taxed. The property cannot be taxed in Michigan. They conclude to form a corporation. Each receives his proportionate share of the stock. The property is taxed in Indiana to the corporation, the same as it was taxed to the copartnership. The result of the respondent's contention would be that the five stockholders in Michigan, who could not be taxed as copartners, would pay the same tax in Indiana on their corporate

property as they did upon it when partnership property, and would then be taxed again in Michigan, on the theory that their property has been converted into personalty, and is therefore taxable in Michigan.   Is not this a species of bald legerdemain?   Is it consistent with a Constitution prohibiting unequal taxation?   Is it the act of an honest and just government?

Chancellor Kent thus states the doctrine:

"Every person is entitled to be protected in the enjoyment of his property, not only from invasions of it by individuals, but from all unequal and undue assessments on the part of government.   It is not sufficient that no tax or imposition can be imposed upon the citizens but by their representatives in the legislature.   The citizens are entitled to require that the legislature itself shall cause all public taxation to be fair and equal in proportion to the value of property, so that no one class of individuals, and no one species of property, may be unequally or unduly assessed." 2 Kent, Comm. 331.

This is not a question of allowing the laws of another State to interfere with the right of taxation in this.   The case presents no such question.   The question is, rather, whether, under our Constitution, evidences or representatives of property can be taxed in this State, while the property they represent is not, never has been, and cannot be, taxable here, but is, and always has been, taxable in the State where located.   Is a certificate of stock any more property than a deed of land or contracts of copartnership?   All are evidences of property, and nothing more.

I will now discuss the authorities cited in my Brother LONG's opinion, and others cited in the brief of the attorney general:

In *Youngblood* v. *Sexton*, 32 Mich. 406 (20 Am. Rep. 654), the right to impose a tax upon the liquor traffic, as a condition to the right to carry on the business, was involved.   It was a personal tax, and not one upon property. It was in effect a license tax, which every dealer was required to pay before entering into the traffic.   The court

expressly held that it was a uniform tax, and that "uniformity is the very basis of this tax. It is levied entirely without discrimination; and the real objection made to it is, not that it lacks uniformity, but that the legislature were unjust in making it uniform, instead of levying it by some standard of discrimination." The law was attacked as unjust and unequal, in that it was not levied in proportion to the business done. The language quoted in my Brother's opinion does not apply to a case where taxation is conceded to be double, but to uniform tax laws, which cannot be made to operate justly in all cases, because of the infirmities of human judgment.

In *State* v. *Lathrop*, 10 La. Ann. 398, a tax was imposed upon a foreign corporation as a condition to its doing business in the State of Louisiana. A like tax was imposed upon home companies, but in a less amount. The decision is based expressly upon the right of the State to impose any condition it pleases upon foreign corporations desiring to do business within the State. That there be no mistake about this, I quote from the decision:

"If this State has thought fit to recognize foreign charters of incorporation to the extent of permitting foreign corporations to transact business in their corporate name, through agents, within our limits, the legislature had an undoubted right to attach what conditions it thought fit to the privilege."

In *Insurance Co.* v. *City of New Orleans*, 1 Woods, 85, 89 (Fed. Cas. No. 7,052), the same question was involved, and the federal court followed and quoted from *State* v. *Lathrop*.

The same question was involved in *Hughes* v. *City of Cairo*, 92 Ill. 339, and the decision was expressly planted upon two grounds: (1) That the constitution of Illinois expressly provides that the general assembly may tax insurance interests or business, and persons or corporations owning or using franchises and privileges, in such manner as it shall from time to time direct, by general law, uniform as to the class upon which it operates; and

(2) that the legislature could impose any conditions it saw fit upon foreign corporations, as a condition to their right to do business in the State.

In the above cases taxation of property subject to general taxation was no more in issue than it was in the case of *Union Trust Co.* v. *Wayne Probate Judge*, 125 Mich. 487 (84 N. W. 1101), involving the validity of the inheritance tax law. All such cases do not involve the question of the assessment of property. They are license taxes, pure and simple, upon the right to do business and the statutory right to inherit.

The question now before us was not raised in *Graham* v. *Township of St. Joseph*, 67 Mich. 652 (35 N. W. 808). The plaintiff there was the owner of stock in a foreign corporation whose sole property was two steamboats, which were assessed at Benton Harbor, a city adjoining St. Joseph, where plaintiff lived. The court held that, if the boats were taxable at Benton Harbor, plaintiff's stock could not be taxed at St. Joseph, and held that the boats were not taxable in Benton Harbor, and the stock was therefore taxable in St. Joseph.

The case of *Sturges* v. *Carter*, 114 U. S. 511 (5 Sup. Ct. 1014), arose in Ohio. Sturges was the owner of some stock of the Western Union Telegraph Company. He claimed exemption because some of the property of the telegraph company was situated in Ohio, and was there taxed. The court followed the decision of the Ohio court in *Bradley* v. *Bauder*, 36 Ohio St. 28 (38 Am. Rep. 547), where it was held that the stock of a foreign corporation, owned by a resident of Ohio, was not included in the act exempting from taxation shares of capital stock which was taxed in the name of the corporation. The constitution provided: "Laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, *stocks*, joint-stock companies, or otherwise." In *Bradley* v. *Bauder* it is said:

" Both the constitution and the statute expressly designate investments in stocks as one of the subjects of taxa-

tion, without any restriction or limitation as to the place or State where such stocks may be authorized or issued."

Taxation of both domestic and foreign stocks, therefore, was expressly authorized by the constitution of Ohio. The right to tax was not in question. The sole question was whether the fact that some of its tangible property had its *situs* in Ohio, and was there taxed, brought the case within the exemption of the statute.

The same question again arose in *Lee* v. *Sturges*, 46 Ohio St. 153 (19 N. E. 560, 2 L. R. A. 556), and was held to be governed by *Bradley* v. *Bauder*. That case was decided in 1889. On page 161 is this language:

"Whether shares of the stockholders and the capital of the company constitute the same or different species of property has been the subject of much discussion in a great number of cases; but the weight of authority we believe to be in favor of the proposition that shares of stock constitute property distinct from the capital or property of the company."

Two of the five justices dissented.

In the construction of State constitutions and State statutes, the Supreme Court of the United States follows the decisions of the State courts, where they are not in conflict with the Constitution of the United States. Several cases are cited by the attorney general from the Supreme Court of the United States, and from other courts, holding that the shares held by stockholders are distinct from the capital stock of the corporation, and that taxation of both is not always necessarily double taxation. Among them is *City of New Orleans* v. *Houston*, 119 U. S. 265 (7 Sup. Ct. 198), where it was expressly held that the assessment of a tax upon shares or shareholders in a corporation, which the company was required to pay irrespective of any dividends or profits payable to the shareholders out of which it might repay itself, was subtantially a tax upon the corporation itself. Counsel quotes from that case as follows:

"It is well settled by the decisions of this court that the

property of shareholders in their shares, and the property of the corporation in its capital stock, are distinct property interests, and, *where that is the legislative intent, clearly expressed, that both may be taxed.*"

In other words, such legislation by the States does not conflict with the Constitution of the United States.   That case quotes with approval the language of the same court in *Tennessee* v. *Whitworth*, 117 U. S. 129 (6 Sup. Ct. 645), wherein it was held that a State statute exempting the capital stock of a railroad company from taxation exempted the shares of stock in the hands of holders. The language quoted is as follows:

"In corporations, four elements of taxable value are sometimes found: (1) Franchises; (2) capital stock in the hands of the corporation; (3) corporate property; and (4) shares of the capital stock in the hands of the individual stockholders.   Each of these is, under some circumstances, an appropriate subject of taxation; and it is, no doubt, within the power of a State, when not restrained by constitutional limitations, to assess taxes upon them in a way to subject the corporation or the stockholders to double taxation.   Double taxation is, however, never to be presumed.   Justice requires that the burdens of government shall, as far as is practicable, be laid equally on all; and, if property is taxed once in one way, it would ordinarily be wrong to tax it again in another way, when the burden of both taxes falls on the same person.   Sometimes tax laws have that effect, but, if they do, it is because the legislature has unmistakably so enacted.   All presumptions are against such an imposition."

I do not deem it necessary to enter into an analysis of the other cases cited from the United States Supreme Court.   Some of them arose under the national banking act, where the State had taxed the stock of these banks in the hands of their shareholders.   Of those cases it is sufficient to say that the banking act expressly provided for such taxation.   But when the State law did not comply with the national act, the State law was held void.   This was the case in *Van Allen* v. *Assessors*, 3 Wall. 573. In other cases it was insisted that the State taxation was

in violation of contracts which the State and the corporation entered into, and was therefore in violation of the Constitution of the United States. Where such contracts were clearly made, the State laws taxing them were held to be in violation of such obligations, under the Constitution of the United States, and therefore void. Where no such contract relations existed, the power of taxation was held to be a matter for the State to determine, and its action and the judgment of its courts thereon were binding. Others are cases where it has happened that one's property had been taxed in two jurisdictions. While this is recognized as a hardship, it seems to be occasionally unavoidable. This is the case in *Coe* v. *Errol*, 116 U. S. 524 (6 Sup. Ct. 475), where forest products intended for exportation to another State, and partially prepared for that purpose, were taxed because their *situs* was there, while during the same year they were assessed to their owner, as a part of his general estate, in the State to which they were to be exported and where he resided. This involves another rule, viz., the undoubted right of the State to tax personal property situated within its borders.

In most of the cases cited by counsel for respondent from the courts of other States, the question now presented does not appear to have been raised. Whether, at the time those decisions were rendered, the constitutions of such States contained a provision similar to that of our own, I have not taken the time to investigate. If they did, the decisions could be of little value as precedents upon a question which was not brought to the attention of the courts. We are not dealing with a case where the value of the property which represents the value of the stock has not been taxed, or perhaps could not be taxed, in a foreign jurisdiction, the *situs* of all its property, or where its value does not consist of tangible property, but largely of its franchises, like that of the Western Union Telegraph Company, doing business in every State of the Union, in *Sturges* v. *Carter*, 114 U. S.

511 (5 Sup. Ct. 1014); or like that of an express company, in *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194 (17 Sup. Ct. 305); or like that of a turnpike road, wherein the court, to justify the assessment of the stock of a foreign corporation, said:

"The beneficial interest, the valuable property, consists in the franchise and right to receive tolls; and whether the right of the company in the soil of their road be technically a fee, or a perpetual easement, makes no difference." *Inhabitants of Great Barrington* v. *County Com'rs of Berkshire*, 16 Pick. 572.

As a reason for the power to tax shares of stock of corporations, the supreme court of Ohio, in *Lee* v. *Sturges*, 46 Ohio St. 153, 162 (19 N. E. 560, 2 L. R. A. 556), said:

"The shares of stock may be worth much more than the property of the corporation; that is, the franchise may be very valuable, while the visible capital may be of but little value, and dividends may be greatly out of proportion to the tangible property, as frequently occurs in regard to street railroads, gas companies, electric-light companies, etc."

This language was used as applicable to domestic as well as foreign corporations. It could not apply in this State, where we have just held that franchises may enhance the value of corporate porperty, which is to be assessed as a unit, and at its cash value. *Detroit Citizens' St. Ry. Co.* v. *Common Council of Detroit*, 125 Mich. 673 (85 N. W. 96).

There may be cases where such stock is properly and justly assessable under the statute and the Constitution. But we are dealing with a case where the value of all property which the stock represents, and of which its certificate is evidence, is all assessed and taxed by and in the State where it is situated, and where all such property has been assessed and taxed, in accordance with the custom of all the States, from the foundation of the government to the present time, and where alone it can be taxed. I have endeavored to demonstrate that this is double, and therefore unequal, taxation. The question is new in this

State, having never before been presented to its courts. To interpret the Constitution so as to include such taxation must be conceded to result in the accomplishment of a gross injustice, and to violate that rule of just taxation which lies at the foundation of honest government. It is a narrow construction. It violates the spirit of that instrument. To hold that such taxation is excluded by the Constitution does justice to all its citizens, in subjecting them to equal taxation, and does injustice to none. In my judgment, the Constitution, both in letter and in spirit, prohibits such taxation.

I think the writ should issue.