WILLIAM B. HALE *vs.* COUNTY COMMISSIONERS OF HAMPSHIRE.

Hampshire.    February 28. — April 8, 1884.    W. ALLEN, J., did not sit.

Bonds issued by a railroad corporation, which is managed by its stockholders for the purposes of private gain, are not "public stocks and securities," within the meaning of the Pub. Sts. *c.* 11, § 4, but are "debts due," and the money invested in them is "money at interest," from which the owner is entitled, in determining the amount for which his personal estate shall be taxed, under that statute, to have money upon which he is paying interest deducted, although the corporation is established by an act of Congress of the United States, and large grants of land have been made to it by Congress to aid in its construction for public purposes, and the bonds are secured by a mortgage on its road, and the mortgage is, as required by law, filed and recorded in the office of the Secretary of the Interior, and the corporation is to some extent subject to government control.

PETITION for a writ of certiorari to quash the proceedings of the county commissioners of Hampshire, in refusing to abate a tax assessed by the town of Northampton upon the estate of the

petitioner. Hearing before *Morton*, C. J., who reserved the case for the consideration of the full court. The facts appear in the opinion.

*A. L. Soule & F. H. Gillett*, for the petitioner.

*D. W. Bond*, for Northampton.

COLBURN, J. The petitioner was a resident of Northampton on the first day of May, 1882, and taxable there for his personal estate. He owned at that time, among other property, bonds issued by the Northern Pacific Railroad Company, of the par value and assessed value of $59,000. He was at the same time indebted for borrowed money, and was paying interest for borrowed money, in a greater sum than $59,000 with any money he had at interest added thereto. He duly filed with the assessors a list of his property subject to taxation, as required by law. The assessors assessed to him a tax for $849.80 on these bonds, being for the full value thereof, making no deduction on account of his indebtedness. He duly applied to the assessors for an abatement of his tax, which was refused on September 21, 1882. He thereupon duly made complaint to the county commissioners of Hampshire County, alleging an overvaluation in the sum of $59,000 of his personal estate subject to taxation. After due hearing, the commissioners dismissed his complaint, finding that he was not entitled to deduct his indebtedness from the amount of the bonds, but was taxable for them as public stocks and securities. He thereupon brought this petition for a writ of certiorari.

It is conceded that all the proceedings of the petitioner have been in due form ; and that he is entitled to the abatement he asks, if he is right in his claim that he is entitled to have his indebtedness deducted from the amount of the bonds, in fixing the valuation of his personal property, for the purpose of assessment for taxes.

It is agreed in the case, that the Northern Pacific Railroad Company is a railroad corporation, established by act of Congress approved July 2, 1864, with a capital of $49,000,000 of common stock and $43,000,000 of preferred stock, divided into shares of the par value of $100 each. The company made default in interest on its bonds in January, 1874, and the property was placed in the hands of a receiver in April, and was sold on

August 12, 1875, to a new company, which issued the bonds in question.

It appeared that each of these bonds was designated on its face, "Northern Pacific Railroad and Land Grant, General First Mortgage, Sinking Fund six per cent Gold Bonds;" that they were payable to bearer, on January 1, 1921, with interest payable semiannually, for which coupons were attached.

By the provisions of the Pub. Sts. *c.* 11, § 4, personal estate, for the purposes of taxation, includes, among other property, "money at interest, and other debts due the persons to be taxed more than they are indebted or pay interest for," and "public stocks and securities."

The first question presented is whether these bonds are "public stocks and securities," within the meaning of the statute. The course of legislation furnishes some aid in determining this question.

In 1793, "public securities of all kinds" were made subject to taxation specifically, and have so continued ever since. Apparently, before that time, such securities were regarded for purposes of taxation as money at interest. It does not appear that, at the time these terms were first used, there was anything to which they could apply, except securities issued upon the credit of some government, or some municipal corporation. And we are not aware that their meaning has been enlarged by any subsequent legislation. In "An act to ascertain the ratable estate within this Commonwealth," St. of 1820, *c.* 64, in § 1, instead of the words "public securities of all kinds," but obviously as a substitute therefor, the language is, "government securities of all kinds, particularly distinguishing securities of the United States." By the Pub. Sts. *c.* 116, § 40, savings banks are required to make a report of their investments, and, among other things, of the amount invested in "public funds, including all United States, state, county, city, and town bonds," and subsequently, in the same section, of the amount invested in "railroad bonds."

Though public securities have been for so long a time the subject of taxation, the meaning of the term has never come directly before this court for construction, except in the case of *Hall* v. *County Commissioners*, 10 Allen, 100. In that case, it

was held that bonds issued by this Commonwealth in aid of the Western Railroad, and bonds issued by the city of Albany, under authority of the Legislature of New York, in aid of the construction of the Albany and West Stockbridge Railroad, which was a continuation of the Western Railroad, were "public stocks and securities." But that decision gives but little aid in determining the question before us, as the fact that those bonds were issued on the credit of the Commonwealth and that of the city of Albany clearly rendered them public securities, though some of the language used in the opinion is relied upon in support of the respondents' claim.

Railroad corporations are private corporations. 2 Kent Com. 275. Angell & Ames on Corp. (11th ed.) §§ 31, 40. Field on Corp. § 2. *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 668. And though they are established for the public benefit, as perhaps all corporations are in theory, it is in no other sense than turnpike, bridge, banking, or insurance corporations are established for the public benefit. Their foundation is private, for gain to their stockholders. The corporations being private, their stocks and securities are private.

We are of opinion that railroad bonds are not "public stocks and securities," within the ordinary meaning of those terms, or any meaning the Legislature has by implication given them. As bearing upon this question, the language of Mr. Justice Story in *United States* v. *Wigglesworth*, 2 Story, 369, 373, is pertinent: "It is, as I conceive, a general rule of interpretation of all statutes, levying taxes or duties upon subjects or citizens, not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out, although standing upon a close analogy."

But it is urged by the respondents, that the bonds of the Northern Pacific Railroad Company are unlike the bonds of other railroads, because that railroad was established by act of Congress for great public purposes, and large tracts of land were granted to it, in the language of the act, "for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores,

over the route of said line of railway;" because its bonds were issued and secured by mortgage on the road and its lands, by authority of Congress, and the mortgage was to be filed and recorded in the office of the Secretary of the Interior; because it was provided that all the people of the United States should have the right to subscribe for its stock; and it is subject to such regulations as Congress may impose respecting charges for government transportation.

We think none of these considerations change the character of the corporation, or its bonds, from private to public. It is managed and controlled by its stockholders like other railroad companies with a view to profit. The government is in no way responsible for the payment of its bonds. All railroads are, by § 3964 of the U. S. Rev. Sts. made post-roads, and Congress has made large grants of land to aid in the construction of other railroads, many of which were not established by Congress.

Even if the government had become a corporator, it would not have changed the character of the corporation from private to public, unless the stock was exclusively owned by the government. 2 Kent Com. 275. In *United States Bank* v. *Planters' Bank*, 9 Wheat. 904, 907, Chief Justice Marshall says: "It is, we think, a sound principle, that when a government becomes a partner in any trading company, it devests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. Instead of communicating to the company its privileges and its prerogatives, it descends to a level with those with whom it associates itself, and takes the character which belongs to its associates, and to the business which is to be transacted."

The bonds held by the petitioner were "debts due," and the money invested in them was "money at interest," from which he was entitled, in determining the amount for which he was to be taxed, to have the money upon which he was paying interest deducted.

In the opinion of a majority of the court, the

*Writ of certiorari is to issue.*