## SELLIGER *v.* COMMONWEALTH OF KENTUCKY, BY ALEXANDER, REVENUE AGENT.

ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 115. Argued March 16, 17, 1909.—Decided April 5, 1909.

Where there is nothing in the record on which to base them this court cannot indulge in presumptions as to which of several possible forms a transaction may have taken.

Where goods are exempt from the taxing power of the State under the Constitution of the United States because not within the State, the protection of the Constitution extends to warehouse receipts for those goods locally present within the State; and this rule applied to whiskey in a foreign country, warehouse receipts for which were held by a person in Kentucky and sought to be taxed as personal property at owner's domicil.

A tax upon warehouse receipts for goods amounts in substance and effect to a tax upon the goods themselves. *Fairbank* v. *United States*, 181 U. S. 283.

The facts are stated in the opinion.

*Mr. Alexander Pope Humphrey* and *Mr. John L. Dodd*, with whom *Mr. Joseph C. Dodd* was on the brief, for plaintiff in error:

The tax in question violates § 10, Art. I, of the Constitution of the United States prohibiting a State from laying any tax upon exports. *Brown* v. *Maryland*, 12 Wheat. 419; *The License Cases*, 5 How. 575; *Almy* v. *California*, 24 How. 169; *Low* v. *Austin*, 13 Wall. 29; *May* v. *New Orleans*, 178 U. S. 504, distinguished.

The tax here attempted to be levied is in violation of the Fourteenth Amendment to the Constitution of the United States. Personal property having an actual situs beyond the territorial boundary of a State cannot be taxed by that State. *Louisville & Jeffersonville Ferry Co.* v. *Kentucky,* 188 U. S. 385; *Delaware R. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *Ayer & Lord Tie Co.* v. *Kentucky,* 202 U. S. 409.

A warehouse receipt is nothing more or less than a document of title, and has always been so treated. One of its uses is as a means by which delivery can be made of an article of personal property which has been sold. 2 Benj. on Sales, 1043; 10 A. & E. Ency. of Law, 1; *Gibson* v. *Stevens,* 8 How. 399, 400; *Leonard* v. *Davis,* 1 Black, 482, 483; *Holliday* v. *Hamilton,* 11 Wall. 564, 565; *The Thames,* 14 Wall. 106; *Crapo* v. *Kelly,* 16 Wall. 640; *Insurance Co.* v. *Kiger,* 103 U. S. 556; *Union Trust Co.* v. *Wilson,* 198 U. S. 538, 539.

The German warehouse receipts are merely evidence that a given amount of whiskey has been stored there. It is the whiskey, which the receipts are given as evidence of, that has actual value, and the receipts cannot be taxed because to do so would be in effect to tax the whiskey, which, confessedly, is beyond the reach of the taxing power of Kentucky. See *Almy* v. *California,* 24 How. 169; *Tremlett* v. *Adams,* 13 How. 303; *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 581; *Postal Tel. Co.* v. *Adams,* 155 U. S. 698; *Dobbins* v. *Commissioners,* 16 Pet. 435; *Railroad Co.* v. *Jackson,* 7 Wall. 262; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Leloup* v. *Mobile,* 127 U. S. 640.

*Mr. M. J. Holt,* with whom *Mr. B. F. Washer* was on the brief, for defendant in error:

If the 7,000 barrels of whiskey were exported temporarily, that is, to await a better market and to be re-imported when the price justified, or to evade for the time being the revenue tax of ninety cents per gallon, the taxable situs is in Kentucky, the

place of residence of the owner. *Union Transit Co.* v. *Kentucky,* 199 U. S. 194; *Board &c.* v. *Fidelity Trust Co.,* 111 Kentucky, 667; *May* v. *New Orleans,* 178 U. S. 507; Kentucky Const., §§ 172, 174; Kentucky Stat., § 4020.

If the whiskey, by reason of its exportation and actual situs in Germany, is exempt from a state ad valorem tax, then the warehouse receipts are taxable.

Whiskey warehouse receipts are intangible property, the situs of which is at the domicil of the owner. They are property in and of themselves, and are not mere indicia of title.

By the common and civil law, by the law merchant, and by express statutory provision (Ky. Stats., § 4770) they are negotiable instruments. *Commonwealth* v. *Selliger,* 30 Ky. L. Rep. 452, 453; *Farmer* v. *Ethridge,* 24 Ky. L. Rep. 653; *Cochran &c.* v. *Ripy,* 13 Bush (Ky.), 505; *Greenbaum* v. *Meggilen,* 10 Bush (Ky.), 420; Purdy's Beach on Priv. Corp., §§ 271, 272, 509a, 350, 510; *Board &c.* v. *Fidelity Trust Co.,* 111 Kentucky, 677; 30 A. & E. Ency. Law, pp. 69–77; *Winslow* v. *Fletcher,* 52 Am. Rep. 122; *Wilkesbarre &c.* v. *Wilkesbarre,* 148 Pa. St. 601; *Whitaker* v. *Brooks,* 90 Kentucky, 76; *Knox* v. *Eden,* 148 N. Y. 441; *Columbus &c.* v. *Wright,* 151 U. S. 470

The provision of the Federal Constitution, Art. I, § 10, Subs. 2, "that no State shall lay an impost or duties on imports or exports," does not apply to the levy of an ad valorem tax on this whiskey or the warehouse receipts as the property of plaintiff in error, because: It is a tax levied upon the property of all citizens of this State, wherever situated. It is not an impost or duty.

The whiskey has lost the character of an export, the original shipment has been broken, four-fifths of it have been sold, the consignor and consignee are one and the same, and the residue is on the market and for sale. *May* v. *New Orleans,* 178 U. S. 501, 509 (import case); *Coe* v. *Errol,* 116 U. S. 517 (export case); *Turpin* v. *Burgess,* 117 U. S. 506, 507 (export case); *American Steel Co.* v. *Speed,* 114 U. S. 510, 519.

No Federal question is involved. *McCullough* v. *Maryland,*

4 Wheat. 316, 418, 428, 429; *Burke* v. *Wells*, 208 U. S. 22–25; *Union Pac. Ry. Co.* v. *Peniston*, 18 Wall. 5; *Lewis* v. *Monson*, 151 U. S. 549; *Home Ins. Co.* v. *New York*, 134 U. S. 600; *Delaware R. R. Tax Case*, 18 Wall. 206, 231; *Coe* v. *Errol*, 116 U. S. 524; *Saving Society* v. *Multnomah County*, 169 U. S. 426, 427, 431; *Kirtland* v. *Hotchkiss*, 105 U. S. 498; *Bank U. S.* v. *Huth*, 4 B. Mon. (Ky.) 443; *New Orleans* v. *Stempel*, 105 U. S. 320.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a proceeding to recover back-taxes on personal property of the plaintiff in error, hereafter called the defendant. He pleaded that he did own certain barrels of whiskey which he did not list for the years in question, but that he had exported them to Bremen and Hamburg, in Germany, for sale abroad, and that the State was forbidden to tax them, both because they were exports, U. S. Const., Art. I, § 10, and because their permanent situs was outside the State. Fourteenth Amendment. *Delaware, Lackawanna & Western R. R. Co.* v. *Pennsylvania*, 198 U. S. 341. *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194. The plaintiff replied, denying that the export was for sale and that the situs of the whiskey was abroad. It alleged that the defendant was a citizen and resident of Kentucky, engaged there in the wholesale whiskey business, and that he shipped the whiskey to Germany merely to evade revenue and ad valorem taxes on the same. It alleged further that the defendant remained the owner and in possession of the whiskey, except such portion as he reshipped to himself or to purchasers in the United States, that while the whiskey remained in the German warehouses he held the warehouse receipts, used them as collaterals and traded in them, and that the barrels of whiskey sold by him were mostly returned to the State of Kentucky, and all to the United States. The court of first instance held that the whiskey was exempt on both the grounds taken by the defendant. On appeal to the state circuit court for the county, the judgment was affirmed

on the ground that the situs of the whiskey was outside the
State. A further appeal was taken to the Court of Appeals,
and that court, accepting the fact that the whiskey was beyond
the taxing power of Kentucky, nevertheless sustained the tax
as a tax on the warehouse receipts. The case then was brought
by writ of error to this court.

We think that we have stated the effect of the pleadings
fairly, and it will be observed that the plaintiff's claim was of a
right to tax the whiskey, the warehouse receipts being men-
tioned only to corroborate the plaintiff's contention as to the
true domicil of the goods. After the decision, the amount of
whiskey for which the defendant held German warehouse re-
ceipts at the material times and the value of the whiskey were
agreed, and thereupon the court, reciting the agreement, di-
rected a judgment for taxes due upon the warehouse receipts,
valuing them at the agreed value "per barrel of whiskey em-
braced in them." So that it will be seen that the effect is the
same as if the whiskey itself had been taxed, and the question
is whether, by such a dislocation of the documents from the
things they represent, a second property of equal value is cre-
ated for taxing purposes, which can be reached although the
first could not. Possibilities similar in economic principle some-
times have to be, or at least have been, recognized, but of course,
economically speaking, they are absurd.

We are dealing with German receipts, and therefore we are
not called upon to consider the effect of statutes purporting
to make such instruments negotiable. Bonds can be taxed
where they are permanently kept, because by a notion going
back to very early law the obligation is, or originally was, in-
separable from the paper or parchment which expressed it.
*Buck* v. *Beach*, 206 U. S. 392, 403, 413. That case and the
authorities cited by it, show how far a similar notion has been
applied to negotiable bills and notes. But a warehouse receipt
does not depend upon any peculiar doctrine for its effect. A
simple receipt merely imports that goods are in the hands of a
certain kind of bailee. But if a bailee assents to becoming

bailee for another to whom the owner has sold or pledged the goods, the change satisfies the requirement of a change of possession so far as to validate the sale or pledge. Therefore it is common for certain classes of bailees to give receipts to the order of the bailor, and so to assent in advance to becoming bailee for any one who is brought within the terms of the receipt by an endorsement of the same. But this does not give the instrument the character of a symbol, it simply makes it the means of bringing about what is somewhat inaccurately termed a change of possession, upon ordinary legal principles, just as if the goods had been transported to another warehouse. *Union Trust Co.* v. *Wilson,* 198 U. S. 530, 536. If the receipt contains no clause of assent to a transfer, it has been held that an endorsement goes no further than a transfer and unaccepted order on any other piece of paper. *Hallgarten* v. *Oldham,* 135 Massachusetts 1.

The form of the receipts given in Germany does not appear. It does not appear that they contained any assent to transfer, unless by conjecture from the defendant's testimony that he pledged them for loans. Even that conjecture is made more doubtful, if not excluded, by the findings of the lower courts. It does not appear that the Court of Appeals made a different finding if it had the power to do so. This court can make none. There is no presumption that we know of that the transactions took one form or had one effect rather than another.

We can think of but two ways in which the receipts could amount to more than a mere convenience for getting quasi-possession of the goods. In the first place, they might express or imply a promise to be answerable, or carry a statutory liability, for a corresponding amount in case the property referred to was delivered to another without a surrender of the receipts. See *Mechanics' & Traders' Ins. Co.* v. *Kiger,* 103 U. S. 352. Such a promise might have a distinct value if the promisor had credit. But it cannot be assumed on this record that the receipts contained it, and if they did, even then the value of the instrument would be due rather to the assumption that the

bailee would not give up the goods without a return of it than to the promise. The value of the promise would vary with the promisor. As a key to the goods a receipt no more can be called a second property of equal value than could a key to an adamantine safe that could not be opened without it be called a second property of a value distinct from but equal to that of the money that the safe contained. The receipt, like the key, would be property of some small value distinct from that to which it gave access. But it would not be a counterpart, doubling the riches of the owner of the goods.

In the second place, the receipt might be made the representative of the goods in a practical sense. A statute might ordain that a sale and delivery of the goods to a purchaser without notice should be invalid as against a subsequent *bona fide* purchaser of the receipt. We need not speculate as to how the law would deal with it in that event, as we have no warrant for assuming that the German law gives it such effect. On the facts before us, and on any facts that the Court of Appeals can have had before it, the receipts cannot be taken to have been more than one of several keys to the goods. It cannot be assumed that a good title to the whiskey could not have been given while the receipts were outstanding. We assume that they made it very unlikely that it would be, but the practical probability does not make the instrument the legal equivalent of the goods. We take it to be almost undisputed that if the warehouses were in Kentucky the State would not and could not tax both the whiskey and the receipts, even when issued in Kentucky form, and that it would recognize that the only taxable object was the whiskey. The relation of the paper to the goods is not changed by their being abroad, and the only question in the case is whether the paper can be treated as property equivalent in value to the goods, because in some way it represents them.

We state the question as we have stated it because that is the one that is raised by the decision under review. It would be a mere quibble to say that the receipts, as paper, had an in-

finitesimal value, that they acquired a substantial one, although much less than that of the whiskey, because of their practical use, and that this court is not concerned with a mere overvaluation. The tax is imposed on the theory that the receipts are the equivalents of the goods and are taxable on that footing, although the goods cannot be taxed. Assuming, as the Court of Appeals assumed, that the whiskey is exempt under the Constitution of the United States, we are of opinion that the protection of the Constitution extends to warehouse receipts locally present within the State. What was said by Chief Justice Taney about bills of lading applies to them, *mutatis mutandis:* "A duty upon that is, in substance and effect, a duty on the article exported." *Almy* v. *California,* 24 How. 169; *Fairbank* v. *United States,* 181 U. S. 283, 294. We discuss the case on the facts assumed by the Court of Appeals. Whether a finding would have been warranted that the whiskey still was domiciled in Kentucky, or for any other reason was not exempt, is a matter upon which we do not pass. See *New York Central & Hudson River R. R. Co.* v. *Miller,* 202 U. S. 584, 597.

*Judgment reversed.*