## Cook v. Board of Commissioners of the County of Marion.

[No. 21,568. Filed November 3, 1910. Rehearing denied February 16, 1911.]

1. TAXATION.—*Stock in Nonresident Corporation.*—*Statutes.*—Under §10143 Burns 1908, Acts 1895 p. 21, §1, providing, among other things, that "all shares [of stock] in foreign corporations except national banks, owned by the inhabitants of the State," shall be taxed within this State, shares of stock of a Michigan corporation, held by a resident of this State, are taxable here, though the corporation pays taxes on all its property in Michigan. pp. 221, 222, 224.

2. TAXATION.—*Equality and Uniformity of.*—*Constitutional Law.*—Article 10, §1, of the Constitution, requiring uniform and equal rates of taxation means a uniform and equal rate of assessment and taxation within the taxing district, and does not prohibit the taxing of shares of stock in a nonresident corporation held by a resident of this State, though the corporation is taxed upon all its property in the foreign state. p. 222.

3. STATES.—*Legislative Policy of.*—*Judicial Control Over.*—The courts will not exercise any control over the legislative policy of the State. p. 222.

4. TAXATION.—*Omitted Property.*—*Assessment.*—*Penalty.* — Taxes on omitted property are considered as current taxes for the year in which they are placed on the tax duplicates, and they become delinquent thereafter the same as other current taxes. p. 223.

5. TAXATION.—*Omitted Property.*—*Time of Assessment.*—*Special Findings.*—*Inferences.*—In an action to recover taxes upon omitted property, paid under protest, the Supreme Court will not infer from a special finding showing that the plaintiff requested from the county treasurer a statement of his taxes, which was furnished to him (but the taxes in controversy were not included in such statement by the county treasurer), that the taxes on omitted property were not theretofore assessed against him. p. 224.

6. TRIAL.—*Special Findings.* — *Evidentiary Facts.* — Evidentiary facts contained in a special finding will be disregarded. p. 224.

From Marion Circuit Court (16,076); *Charles Remster,* Judge.

Action by Nathan S. Cook against the Board of Commissioners of the County of Marion. From the judgment rendered for plaintiff, he appeals. *Affirmed.*

*M. W. Hopkins,* for appellant.

*Edward B. Raub,* for appellee.

MYERS, J.—The questions for determination in this case arise upon the conclusions of law upon the following special finding of facts: On the first days of March and April in the years from 1892 to 1905, both inclusive, appellant, who has been a resident of Marion county continuously since November, 1897, owned shares of the stock of the Advance Thresher Company, a corporation of the State of Michigan, having its principal office in Battle Creek, in that state, where it was engaged in the manufacture of engines and threshers. During each and all the years for which appellant was assessed, all the property of the corporation was returned by, and taxed to it, and the taxes paid by it to the proper authorities of the State of Michigan. On February 1, 1905, the auditor of Marion county notified appellant in writing that he, the appellant, was the owner of property which had been omitted from taxation, and for him to appear on a day fixed and show cause why such property should not be listed. Appellant appeared and admitted that he owned some of the stock of the Advance Thresher Company, but denied the right of appellee to tax it. After some negotiation with the taxing authorities

and their counsel, the auditor, after September 23, 1905, and before March 30, 1907, added to and placed upon the tax duplicate in the office of the treasurer of Marion county against appellant, as omitted property, a valuation of the shares held by him, together with the rate of taxes for each year, the date, valuation, rate and the total tax being as follows:

| Years | Amount added | Rate | Total tax |
|---|---|---|---|
| 1892 | $20,675 | $1.59 | $324.60 |
| 1893 | 20,675 | 1.69 | 349.41 |
| 1894 | 18,400 | 1.66 | 305.45 |
| 1898 | 18,600 | 1.85 | 344.10 |
| 1899 | 18,600 | 1.80 | 334.80 |
| 1900 | 23,250 | 1.92 | 446.40 |
| 1901 | 23,250 | 1.95 | 453.38 |
| 1902 | 23,250 | 2.08 | 483.60 |
| 1903 | 23,250 | 2.09 | 485.93 |
| 1904 | 23,250 | 2.14 | 497.55 |
| 1905 | 23,250 | 2.13 | 495.23 |

Total taxes added,                    $4,520.45

Except inferentially from a statement furnished to appellant by the treasurer on April 24, 1906, the date of placing these taxes upon the duplicate is not found, further than that it was between September 23, 1905, and March 30, 1907, on which latter day the auditor notified appellant that the taxes were unpaid. It is found that in the argument before the auditor, against placing such property on the duplicate, the auditor referred appellant to the agent of the county, reporting such property for taxation, and on September 14, 1905, the auditor and the county attorney again heard appellant's attorney, and the auditor agreed to be governed in his actions and decisions, as to assessing the shares, by the opinion of the county attorney, and on September 23, 1905, the county attorney rendered an opinion that the shares were not taxable in Marion county, and that appellant relied upon the agreement with the auditor, and gave the matter no further attention, and had no actual notice of the making of the

assessment until March 30, 1907. Appellant never returned any of the shares for taxation in Marion county, and no taxes were paid by him on the shares in Marion county, until the payment made by him May 6, 1907.

On March 30, 1907, the treasurer of Marion county demanded payment of the taxes assessed, as before shown, together with a penalty of $748.27, which sum appellant paid May 6, 1907, under protest, and claimed the right to have the whole amount refunded. On April 24, 1906, appellant requested of the treasurer a statement of all taxes then assessed against him, and on that date he paid to the treasurer the taxes set out in such statement, but the statement contained none of the taxes before referred to. Appellant on June 15, 1907, filed his claim for a refunding order with the board of commissioners, which was disallowed, and he appealed to the Marion Circuit Court, where, upon trial and special findings of fact, the court adjudged to be refunded to him the taxes for the years 1892, 1893 and 1894, with interest paid by him on May 6, 1907, aggregating $1,141.60, and refused to refund the remainder of the taxes, penalties and interest paid by him.

The first contention of appellant is that the judgment is erroneous, for the reason that, conceding that the legislature has the power to provide for the assessment of stock held by a resident of the state in a foreign corporation, the legislation succeeding that of 1872, under which the case of Seward v. City of Rising Sun (1881), 79 Ind. 351, was decided, evinces an intention to avoid double taxation, by relieving the resident owner in this State from taxation upon stocks in foreign corporations where the latter are taxed on their property in such foreign state. This contention is denied in the late cases of Darnell v. State (1910), 174 Ind. 143, and Hasely v. Ensley (1907), 40 Ind. App. 598. We are not able to see any reason for a departure from those opinions on the question before us. No good purpose can be attained in extending this opinion in elaborating the reasoning in those cases.

The point is also made that the assessment and collection of the taxes is the taking of appellant's property without due process of law in violation of section one of the 14th amendment to the federal Constitution. This contention is also held adversely to appellant in the case of *Darnell* v. *State, supra.* See, also, *Smith* v. *Stephens* (1910), 173 Ind. 564, and cases cited; *Hawley* v. *City of Malden* (1910), 204 Mass. 138, 90 N. E. 415, and cases cited.

It is urged that the assessment is in violation of article 10, §1, of the state Constitution, requiring uniformity and equality of the rate of taxation. This contention is answered in the cases of *Smith* v. *Stephens, supra,* and *Board, etc.,* v. *Johnson* (1909), 173 Ind. 76. The constitutional provision refers to the uniformity and equality of the rate in the assessment and taxation of all property in the taxing district. *Board, etc.,* v. *State, ex rel.* (1900), 155 Ind. 604; *Cleveland, etc., R. Co.* v. *Backus* (1893), 133 Ind. 513, 18 L. R. A. 729; *Pittsburgh, etc., R. Co.* v. *Backus* (1893), 133 Ind. 625; *Pittsburgh, etc., R. Co.* v. *Backus* (1894), 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031.

As to the policy of the statute, we, of course, cannot be concerned, so long as the power exists, and that is conceded. Section 10143 Burns 1908, Acts 1895 p. 21, §1, deals with two classes, viz., property taxable, and property exempt. In the former is included " all shares [of stock] in foreign corporations except national banks, owned by the inhabitants of the State." In the enumeration of property exempt, " shares in corporations, all the property of which is taxable to the corporation itself shall not be assessed to the shareholders." If it had been proposed to exempt shares in foreign corporations, it would doubtless have been stated as an exception, as in the case of national bank shares, while under appellant's construction the exemption clause, if it refers to foreign corporate shares, would nullify the former express provision.

It is also urged that we ought to give the act a construction which would avoid double taxation. Perhaps as an argument of justice and expediency that would be true, but we are confronted with another rule of construction, to wit, that every part of a statute shall, if possible, be given force, and it is only by the construction heretofore given the act, and here followed, that this can be done, and we must assume that the legislature so intended. As a counter-argument upon the question of expediency, it is not beyond the range of high probability that this clause was inserted to encourage investors to invest their means in domestic corporations doing business in this State, or in the jurisdiction where the government furnishes protection to them and their property, and the educational facilities and transportation agencies of modern social and industrial life; at any rate, we are quite satisfied that the assessment was valid.

Error is claimed in the collection of the penalty. It is found that the taxes were assessed and placed upon the duplicate between September 23, 1905, and March 30, 1907, on which latter date the auditor notified appellant that the taxes had been assessed, and the treasurer on the same day made a demand for payment. There is no other finding in the record upon the subject, except a finding that on April 24, 1906, appellant asked the treasurer for a statement of all the taxes assessed against him, and a statement was made to him, the amount thereof being paid, and that this statement included none of the taxes indicated in this controversy. It is settled that taxes upon omitted property, though for years previous, become current taxes for the year in which they are assessed, and that they become delinquent only as other taxes become delinquent, no penalty or interest attaching until they become delinquent. *Gallup* v. *Schmidt* (1900), 154 Ind. 196.

If these taxes were not assessed until after the first Monday in May, 1906, no penalty or interest was chargeable; but we

are asked to find that to have been the case from the
5. finding that upon request the treasurer furnished
appellant a statement of the taxes against him which
embraced none of these taxes, and the presumption is that
the officer did his duty, and that the taxes had not been
then assessed, or he would have exhibited them. In this,
counsel are in error, and we cannot aid the finding by infer-
ences or presumptions. It was incumbent upon appellant
to show that he was entitled to have the penalty and interest
refunded, but he does not present facts showing this right,
unaided by inferences or presumptions. It is not even
claimed in argument that the taxes were assessed after
March 1, 1906. The sole claim made is that, by reason of
the fact that the auditor refused to abide by the decision of
the county attorney, the appellant ought not to pay the
penalties and the interest. The finding as made is
6. only of the evidence; the inferential fact should
have been found by the court, but it is left to stand
upon the evidentiary facts, and they must be here disregarded.
*Coffinberry* v. *McClellan* (1905), 164 Ind. 131; *Chicago, etc.,
R. Co.* v. *Glover* (1902), 159 Ind. 166; *Talbott* v. *English*
(1901), 156 Ind. 299; *Relender* v. *State, ex rel.* (1898), 149
Ind. 283; *Cleveland, etc., R. Co.* v. *Miller* (1898), 149 Ind. 490.

No error is made to appear and the judgment is affirmed.

## ON PETITION FOR REHEARING.

MYERS, C. J.—On petition for a rehearing the learned
counsel for appellant claims that we were in error in holding
that the shares of stock owned by appellant did not
1. represent appellant's property actually and permanently
invested in another state. The court did not so hold,
and did not regard the question as involved in the case. We
based our decision upon the ground that, as to that matter,
the statute fixes the rule of construction, by expressly de-
claring as subject to taxation, " all shares of stock in foreign
corporations," leaving nothing to construction, and it is con-

ceded that the State has the power to select the subjects of taxation.

We were in error in citing the case of *Darnell* v. *State* (1910), 174 Ind. 143, as determining the point that the assessment in this case was not the taking of appellant's property without due process of law. The case intended to be cited was *Board, etc.,* v. *Johnson* (1909), 173 Ind. 76.

The New York cases urged upon our attention in the original briefs, and upon the petition for rehearing, arose under a different statute, and cannot be regarded as throwing any light upon the question here for they were not based upon a statute specifically making stocks in foreign corporations taxable, but taxation was restricted to property " within this State," and it was very properly held that shares of stock were only evidence of property in another state. If our statute stopped with §10142 Burns 1908, Acts 1891 p. 199, §3, providing that " all property within the jurisdiction of this State, not expressly exempted, shall be subject to taxation," those cases would be in point. But our statute adds to property " within the jurisdiction " numerous specific subjects of taxation, where the property is beyond the " jurisdiction of this State," such as " ships, boats and vessels," " goods, chattels and effects " not actually and permanently invested in business in another state, indebtedness due from debtors " within or without the State," and " all shares in foreign corporations." §10143 Burns 1908, Acts 1895 p. 21, §1. In the case of *Lockwood* v. *Town of Weston* (1891), 61 Conn. 211, 23 Atl. 9, there was one section of a statute providing that for the purposes of taxation " personal property in this state or elsewhere, not exempt, shall be taxable, and shall include notes, bonds and stocks, * * * goods, chattels," etc. Another section exempted property situated in another state " when it can be made satisfactorily to appear * * * that the same is fully assessed and taxed in such state," and it was held that stocks in foreign corporations were taxable in Connecticut, unless

it was shown that they had been assessed and taxed else-where. The Connecticut statute is in effect the same as our own, except that the former exempted the stocks paid on in another state, while under our statute they are not exempted.

We are not advised by the opinion in the case of *Sellinger* v. *Kentucky* (1909), 213 U. S. 200, 29 Sup. Ct. 449, 53 L. Ed. 761, what the statute of Kentucky is, but it is stated in the opinion, on page 204, that the court of appeals of Kentucky " accepting the fact that the whisky was beyond the taxing power of Kentucky, nevertheless sustained the tax as a tax on the warehouse receipts," and there is the following significant statement by the court at the close of the opinion: " We discuss the case on the facts assumed by the court of appeals. Whether a finding would have been warranted that the whisky still was domiciled in Kentucky, [though in fact it was in Germany] or for any other reason was not exempt, is a matter upon which we do not pass." Upon looking to the statute of Kentucky (Ky. Stat. 1909 §4020), we find that " all personal estate of persons residing within this state, * * * whether the same be in or out of the state * * * shall be subject to taxation," and we see the reason for the court's statement. The difficulty in the case is, that instead of taxing the whisky, the authorities valued the warehouse receipts, and assessed the taxes on them, and the Supreme Court of the United States expressly bases its decision on the assumption of the Court of Appeals of Kentucky, that the whisky was not itself taxable, and upon the basis that under the ruling of the Kentucky court it would follow that if the whisky were in Kentucky, both the whisky and the warehouse receipts would be taxable, and double taxation result where not intended, and that the receipts were only evidence of property in the whisky, and were not taxable as such.

With the correction of the citation as heretofore shown, the petition for a rehearing is overruled.