BELLOWS FALLS POWER COMPANY *vs.* COMMONWEALTH.

Suffolk.   November 12, 13, 1914. — September 16, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Tax,* Excise on domestic business corporation, On stock of foreign corporation, On bonds of foreign corporation. *Constitutional Law,* Double taxation. *Words,* "Securities."

By St. 1909, c. 490, Part III, §§ 41, 43, the tax commissioner, in ascertaining the value of the shares of a domestic business corporation for the purpose of imposing the excise authorized by the statute, is directed to deduct the value "of securities which if owned by a natural person resident in this Commonwealth would not be liable to taxation; also the value of its property situated in another State or country and subject to taxation therein." By the Public Statutes of Vermont, c. 30, §§ 515, 516, shares of stock in Vermont corporations owned by non-residents of that State are taxable in the town where the corporation issuing the stock has its principal place of business, and the taxes are to be paid by the corporation itself. *Held,* that the tax commissioner, in ascertaining the value of the shares of a domestic business corporation for the purpose of the excise, should not deduct the value of the shares of the stock of such a Vermont corporation owned and held by it, because such shares would be taxable here if owned by a natural person.

*Held, also,* that the tax commissioner should not deduct the value of bonds issued

by such a Vermont corporation and owned by the domestic business corporation, they being "securities" within the meaning of the statute which. if owned by a natural person would be liable to taxation.

The Legislature has constitutional power to impose a property tax on shares of stock in a corporation organized in another State which also are taxable in that State.

RUGG, C. J.   This is a petition under St. 1909, c. 490, Part III, § 70, for the recovery of the amount of an excise alleged to have been excessive, which was levied upon a domestic business corporation under §§ 41 and 43 of Part III of the tax act, St. 1909, c. 490, as amended by St. 1914, c. 198, § 6.*   The questions presented are whether certain stocks and bonds of Vermont corporations are "securities which if owned by a natural person resident in this Commonwealth," by § 41 "would not be liable to taxation," or by § 43 "would be liable to taxation," and also whether such stock is "property situated in another State or country and subject to taxation therein" by § 41.   The pertinent parts of the statute are printed in a footnote.†

---

* The case was heard by *Sheldon*, J., upon the amended pleadings, the facts agreed on by counsel and the petitioner's requests for rulings.   He refused all the requests of the petitioner and ordered that the petition be dismissed, and at the request of the parties reported the case for determination by the full court.

† "Section 41.   The tax commissioner shall ascertain from the returns or otherwise the true market value of the shares of each corporation subject to the requirements of the preceding section, and shall estimate therefrom the fair cash value of all of said shares constituting its capital stock on the preceding first day of April, which, unless by the charter of a corporation a different method of ascertaining such value is provided, shall, for the purposes of this part, be taken as the true value of its corporate franchise. From such value there shall be deducted:

.    .    .    .    .    .    .

" Third, In case of a domestic business corporation, the value of the works, structures, real estate, machinery, poles, underground conduits, wires and pipes owned by it within the Commonwealth subject to local taxation, and of securities which if owned by a natural person resident in this Commonwealth would not be liable to taxation; also the value of its property situated in another State or country and subject to taxation therein.   There shall not be deducted the value of securities which if owned by a natural person resident in this Commonwealth would be liable to taxation, nor shall there be deducted the value of any shares of stock of the corporation itself owned directly or indirectly by it or for its benefit; and the tax commissioner in deter-

The petitioner owned a large number of shares of stock in a Vermont corporation, the value of which the tax commissioner refused to deduct from the true market value of the corporate franchise of the petitioner, for the purpose of determining its excise tax. It is contended by the petitioner that the tax commissioner was in error for two reasons, (1) because the stock of the Vermont corporation would not be subject to taxation in this Commonwealth if owned by a natural person, and (2) because such stock is property situated in another State and subject to taxation therein. These two contentions rest on statutes of the State of Vermont, which are printed in a footnote.*

---

mining for the purposes of taxation the value of the corporate franchise of any such corporation shall not take into consideration any debts of such corporation unless the returns required from it contain a statement duly signed and sworn to, setting forth that no part of such debts was incurred for the purpose of reducing the amount of taxes to be paid by it."

"Section 43. [Clause 1.] Every corporation subject to the provisions of section forty shall annually pay a tax upon its corporate franchise, after making the deductions provided for in section forty-one, at a rate equal to the average of the annual rates for three years preceding that in which such assessment is laid, . . . [Clause 2.] but the said tax upon the value of the corporate franchise of a domestic business corporation, after making the deductions provided for in section forty-one, shall not exceed a tax levied at· the rate aforesaid upon an amount, less said deductions, twenty per cent in excess of the value, as found by the tax commissioner, of the works, structures, real estate, machinery, poles, underground conduits, wires and pipes, and merchandise, and of securities which if owned by a natural person resident in this Commonwealth would be liable to taxation; and [Clause 3.] the total amount of the tax to be paid by such corporation in any year upon its property locally taxed in this Commonwealth and upon the value of its corporate franchise shall amount to not less than one tenth of one per cent of the market value of its capital stock at the time of said assessment as found by the tax commissioner."

* "Extracts from chapter 30: Public Statutes of Vermont.

"Sec. 515. Listed how. Shares of stock in corporations, except railroad corporations, shall be set in the list like other personal estate to the owner thereof, in the town where he resides, if he resides in the State, otherwise in the town where the corporation issuing such stock has its principal place of business.

"Sec. 516. Tax on non-resident's stock. Taxes assessed on such stock of non-residents shall be paid by the corporation, and it shall hold such stock

Plainly these contentions would have no merit in law were it not for the special provisions of the Vermont statute. It was early decided in this Commonwealth that shares of stock in a foreign corporation were taxable as property to the owner resident here, although the place of business and the entire property of the corporation were in another jurisdiction. *Great Barrington* v. *County Commissioners*, 16 Pick. 572. This principle of taxation has been repeatedly upheld, the latest instance being *Hawley* v. *Malden*, 204 Mass. 138. That decision was affirmed in 232 U. S. 1, where, at pages 12 and 13, it was said by Mr. Justice Hughes in delivering the opinion: "Whether, in the case of corporations organized under State laws, a provision by the State of incorporation fixing the *situs* of shares for the purpose of taxation, by whomever owned, would exclude the taxation of the shares by other States in which their owners reside is a question which does not arise upon this record and need not be decided." We are not aware that this question ever has been determined by this court or by the Supreme Court of the United States. It now is presented. It must be taken as the settled purpose of our tax law to assess to the owners resident in this Commonwealth a tax upon all shares of foreign corporations. It is provided in the tax act (St. 1909, c. 490) in Part I, § 2, that "All property real and personal situated within the Commonwealth, and all personal property of the inhabitants of the Commonwealth wherever situated, unless expressly exempted by law, shall be subject to taxation." Part I, § 23, provides that "All personal estate, within or without the Commonwealth, shall be assessed to the owner in the city or town in which he is an inhabitant on the first day" of April, with exceptions not here material, save that by St. 1909, c. 516, § 1, "Merchandise, machinery and animals owned by inhabitants of this Commonwealth, but situated in another State shall be exempt

and the dividends thereon as security for such payment and may deduct the amount from any dividends payable to such shareholders."

"Sec. 496. Property. The following property shall be exempt from taxation: . . .

"III. Shares of stock in a corporation situated in another State, when all the stock of such corporation is taxed in such State to the holders, whether residing within or without such State, or when the corporation is taxed in such State for all its stock."

from taxation." Part I, § 4, provides that "Personal estate for the purpose of taxation shall include . . . Third, Public stocks and securities, . . . bonds of railroads and street railways, stocks in turnpikes, bridges and moneyed corporations within or without this Commonwealth . . ." with exceptions not now of consequence. In substance, the only question is whether these provisions of the law, which plainly include in their scope stock such as is owned by this petitioner in the Vermont corporation, conflict as applied to such shares with any provision of the State or federal constitution.

Vermont has the power to tax all the shares of corporations organized under its laws, whether owned by its residents or by those of other States or countries. This expressly was decided in *Corry* v. *Mayor & City Council of Baltimore,* 196 U. S. 466, and in *St. Albans* v. *National Car Co.* 57 Vt. 68. The principle was applied in *Tappan* v. *Merchants' National Bank,* 19 Wall. 490. It was recognized in *Greves* v. *Shaw,* 173 Mass. 205, 208, *Kingsbury* v. *Chapin,* 196 Mass. 533, 535, and *Kennedy* v. *Hodges,* 215 Mass. 112, 114.

It may be urged on the one side that the nature and the incidents of the shares of stock are fixed by the law by which the corporation is created; that the provisions of that law are limitations upon the essential characteristics of shares and follow them wherever they may go; and that if the *situs* of the shares for purpose of taxation is declared by that law to be in the State of its domicil, that is an inherent restriction which everywhere must be recognized as an incident of the property represented by the shares; that this provision as to *situs* for tax purposes is contractual in substance and may be invoked by the owner in exoneration of liability as much as others which are obligatory are resorted to by creditors to establish a liability, *Converse* v. *Ayer,* 197 Mass. 443, 453, *Whitman* v. *Oxford National Bank,* 176 U. S. 559; that by virtue of the Vermont statute this stock is divested of its taxable character as intangible property and clothed with an immovable garment of tangibility located in Vermont alone, and hence, that these shares stand on the same footing as merchandise and other tactile personal effects which cannot be taxed to their owner in a jurisdiction other than that in which they permanently are placed. *Delaware, Lackawanna &*

*Western Railroad* v. *Pennsylvania,* 198 U. S. 341. *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S. 299. Expressions by eminent judges are laid hold of as countenancing the soundness of these contentions. It was said by Chief Justice Waite in *Tappan* v. *Merchants' National Bank,* 19 Wall. 490, at page 499, "Shares of stock in national banks are personal property. . . . They are a species of personal property which is, in one sense, intangible and incorporeal, but the law which creates them may separate them from the person of their owner for the purposes of taxation, and give them a *situs* of their own. This has been done. [Here is quoted the section of the national banking act to that effect.] This is a law of the property. Every owner takes the property subject to this power of taxation under State authority, and every nonresident, by becoming an owner, voluntarily submits himself to the jurisdiction of the State in which the bank is established for all the purposes of taxation on account of his ownership." In *Covington* v. *First National Bank of Covington,* 198 U. S. 100, at page 111, it was said by Mr. Justice Day, "The *situs* of shares of foreign-held stock in an incorporated company, in the absence of legislation imposing a duty upon the company to return the stock within the State as the agent of the owner, is at the domicil of the owner." It is to be noted, however, that both these cases relate to shares in national banks. The subject of national banking is within the exclusive control of Congress and its mandate respecting any subject within its sphere is supreme and binding upon all the States. The national bank act is explicit as to the *situs* of shares of stock in national banks for taxation. These expressions, therefore, were directed to a different subject and are of slight value in considering the present question, which expressly was left open in *Hawley* v. *Malden,* 232 U. S. 1, 13. See *Grether* v. *Wright,* 23 C. C. A. 498, 512.

Weighty as are the suggestions which have been noted above, we are of opinion that the constitutionality of the statute requiring the taxation of shares like these in question must be sustained. The fundamental ground is that the power to tax all property within its jurisdiction is a necessary attribute of sovereignty, and that there is a certain quality of property in these shares attaching to the person of the owner and hence taxable at his domicil.

It is too well settled to require the citation of authorities that the several States of the Union are foreign to each other except so far as the United States is paramount as the dominating government, and except so far as they are bound to recognize the fraternity among sovereignties established by the Constitution of the United States. No State taxation laws can have extraterritorial effect. Each State, so far as relates to the power of taxation, is an independent sovereignty. It is not concerned with what other States may do as to property within its jurisdiction, which may be made the subject of taxation by itself. *Dwight* v. *Boston,* 12 Allen, 316. *Sturges* v. *Carter,* 114 U. S. 511. *Seward* v. *Rising Sun,* 79 Ind. 351. *Bacon* v. *State Tax Commissioners,* 126 Mich. 22. *Judy* v. *Beckwith,* 137 Iowa, 24. *McKeen* v. *County of Northampton,* 49 Penn. St. 519. *State* v. *Branin,* 3 Zabr. 484, 496. *Bradley* v. *Bauder,* 36 Ohio St. 28. *Ogden* v. *St. Joseph,* 90 Mo. 522, 529. *Commonwealth* v. *Lovell,* 125 Ky. 491. *Stanford* v. *San Francisco,* 131 Cal. 34. All property within the jurisdiction of a State, which is capable of being taxed, may be made subject to taxation unless exempted under federal or State law. No State can assess to its residents a tax upon their real estate or tangible personal property situated in a foreign jurisdiction. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194. Neither can any State give extraterritorial effect to its laws exempting property of its subjects from taxation in other jurisdictions. But, except as restrained by federal or State constitutional provisions, "the power of the State as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction." *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 497.

There is a necessary element of property in shares in corporations which, although intangible, attaches to and follows the person of the owner, and is inseparable from it. Such shares are personal property and not real estate. They are subject to succession according to the law of the domicil of the owner. As was said in *Hawley* v. *Malden,* 232 U. S. 1, at page 9, "It is well settled that the property of the shareholders in their respective shares is distinct from the corporate property, franchises and capital stock," and further at page 12, that shares of stock are "in the nature of contract rights or choses in action. Morawetz on Cor-

porations, § 225." It was held in *Stanwood* v. *Stanwood*, 17 Mass. 57, in an opinion written by Chief Justice Parker, that shares of stock in a bank were choses in action. The principle of that decision applies to shares of stock in all corporations. It is an incident of such shares that the owner is entitled to participate in the net profits earned, to enforce the use of its capital for its corporate purposes, to restrain abuses of corporate powers, and to receive his proportion of the property of the corporation remaining after the payment of its debts upon its dissolution. *Van Allen* v. *The Assessors*, 3 Wall. 573, 584. *Farrington* v. *Tennessee*, 95 U. S. 679, 687. In most corporations he has the further right in proportion to his ownership to participate in the election of officers and such direction of the corporate affairs as may be vested in stockholders. Certificates of stock may be the subject of contracts for sale or exchange under our laws. *Opinion of the Justices*, 196 Mass. 603, 619, 621. Our laws may be invoked to enforce such contracts and other property rights, *Herbert* v. *Simson*, 220 Mass. 480, as well as to protect the owner and his property interest therein against theft or fraud. His property right as such owner may be attached and secured by his creditors by resort to our courts, and in many instances doubtless this is the only way of reaching such right in any jurisdiction. This property right follows the person of the owner, has its *situs* at his domicil and is there taxable regardless of any law of a sister State by whose authority the corporation itself may have been created.

Certificates of stock in a corporation have other of the characteristics of property. They may be converted like corporeal personal property. *Jarvis* v. *Rogers*, 15 Mass. 389. *Hagar* v. *Norton*, 188 Mass. 47, 50. *McAllister* v. *Kuhn*, 96 U. S. 87. They are the subject of larceny and embezzlement. *O'Herron* v. *Gray*, 168 Mass. 573, 575. They may be hypothecated, pledged and replevied. *Kennedy* v. *Hodges*, 215 Mass. 112, 115. They may be made by statute subject to attachment and garnishment. *Puget Sound National Bank of Everett* v. *Mather*, 60 Minn. 362. Title passes by their delivery and assignment or endorsement. *Sargent* v. *Essex Marine Railway*, 9 Pick. 201. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90, 95. *Boston Music Hall Association* v. *Cory*, 129 Mass. 435. Certificates of stock are not in every respect the equivalent of the shares in the corporation which they

represent. Often they are spoken of as evidence of title, *Kennedy* v. *Hodges, ubi supra, Richardson* v. *Shaw,* 209 U. S. 365, 378; but they may be regarded as something more. Indeed, it was said in *Hatch* v. *Reardon,* 204 U. S. 152, 161, respecting a certificate of stock, "That document was more than evidence, it was a constituent of title. No doubt, in a more remote sense, the object was the membership or share which the certificate conferred or made attainable. More remotely still it was an interest in the property of the corporation, which might be in other States than either the corporation or the certificate of stock." In *Merritt* v. *American Steel-Barge Co.* 24 C. C. A. 530, at page 537, is found this language: "Speaking technically, it is true that a stock certificate is written evidence of a certain interest in corporate property. . . . But in the business world such obligations or securities are treated as something more than mere muniments of title. They are daily bought and sold like ordinary chattels, . . . they have an inherent market. value, and, while differing in some respects from chattels, they are generally classified as personal property." Said Cooley, C. J., in *Daggett* v. *Davis,* 53 Mich. 35, respecting the characteristics of stock in a corporation, "the certificate itself is also property; standing as it does as the representative of the shares." In *Simpson* v. *Jersey City Contracting Co.* 165 N. Y. 193, 197, 198, occur these words: "Certificates of stock are treated by business men as property for all practical purposes. They are sold in the market and they are transferred as collateral security for loans, and they are used in various ways as property. They pass by delivery from hand to hand." In Cook on Corporations, (7th ed.) § 485, it is said, "certificates of stock have gradually grown to be more than mere receipts or evidence of stock, and have come to be the stock itself, practically, in business transactions . . . and, like a promissory note, a certificate of stock is property in itself." While some of these expressions go rather far, enough has been said to show a generally prevailing tendency to treat a certificate of stock as possessing incidents of property. These are a sufficient basis for taxation to the owner at his residence. The validity of a commercial usage whereby possession of a certificate of stock duly indorsed enables the holder to pass title good against the world has been recognized in numerous cases. *Russell* v. *American Bell Tele-*

*phone Co.* 180 Mass. 467. *Andrews* v. *Worcester, Nashua &*
*Rochester Railroad,* 159 Mass. 64, 66. *Scollans* v. *Rollins,* 173
Mass. 275; *S. C.* 179 Mass. 346. *Clews* v. *Friedman,* 182 Mass.
555. *Baker* v. *Davie,* 211 Mass. 429, 438.

If the domiciliary State of the corporation has the right to
establish the *situs* of its shares of stock for purposes of taxation,
on principle it would seem that that power may be exercised to
declare an entire exemption from taxation and to collect revenue
in some other way from the corporation. If the power exists in
the State creating the corporation to establish the *situs* of its
shares of stock for the purpose of taxation, and is exercised, it
must be absolute and no other State can inquire into the char-
acter or extent of that taxation in an effort to tax its own citizen
who is a stockholder in such corporation. It hardly seems possi-
ble that the Fourteenth Amendment to the federal constitu-
tion can have such an effect.

The theory of taxation is that it is money exacted from the
subject in return for the protection afforded by established gov-
ernment. It is the duty of governments to protect persons and
property. These rights of the Massachusetts owner of shares of
stock in the Vermont corporation pertain to his residence here
and receive the protection of our laws. To that extent the share-
holder resident here receives for the taxation imposed a return
in governmental protection for the property rights incident to
his ownership.

These are incidents of property which necessarily follow the
person of the owner of shares in foreign corporations, even though
the shares may be taxed at the foreign domicil of the corpora-
tion. For these purposes the *situs* of corporate shares follows the
domicil of the owner. This is the general rule. There appears
to us to be no ground for the establishment of an exception to
that general rule in the instant case. *Bristol* v. *Washington*
*County,* 177 U. S. 133. *Ayer & Lord Tie Co.* v. *Kentucky,* 202
U. S. 409. *Southern Pacific Co.* v. *Kentucky,* 222 U. S. 63, 69.
*Darnell* v. *Indiana,* 226 U. S. 390. *Frothingham* v. *Shaw,* 175
Mass. 59. *Welch* v. *Boston,* 221 Mass. 155. On this ground, if
not on others also, *Selliger* v. *Kentucky,* 213 U. S. 200, is distin-
guishable.

The case at bar closely resembles *Bonaparte* v. *Tax Court,*

104 U. S. 592, where municipal and State bonds, some entirely exempted from taxation. and others subject to taxation in the State of issue by the State laws under which they were authorized, nevertheless were held to be taxable at the domicil of the owner. In principle that case seems indistinguishable from the case at bar. An express legislative declaration by the debtor State that its bonds either shall be exempt from taxation or shall be subject to taxation in its own jurisdiction, although not categorically an attempt to separate the *situs* of the debt from the person of the owner, yet is in substance the equivalent of a declaration to that end. It is a legislative effort to incorporate into the property as one of its essential qualities an exemption from taxation or a liability to taxation in the State of issue alone. It is hard to conceive of a purpose on the part of that State not to attach by strong inference and fair implication a separation of *situs* for taxation from the domicil of the owner to bonds so issued, if the effective exercise of such a function were within the scope of legislative power. Indeed, the Vermont statute is not a precise assertion of separation of *situs* of shares from the person of the non-resident owner. It is a simple exercise of the power of the sovereign to tax. That was the effect of one of the statutes under consideration in *Bonaparte* v. *Tax Court*, 104 U. S. 592. The barrier against accomplishing that purpose in such way as to compel recognition by the taxing power of a sister State was no greater in substance in that case than it is in the present case.

It has been held that the State having jurisdiction over the debtor has the constitutional power to assert and maintain for itself a *situs* of the debt for purposes of taxation and levy a tax thereon against the creditor domiciled in another State. This was decided as to debts secured by mortgage upon real estate in *Savings & Loan Society* v. *Multnomah County*, 169 U. S. 421. It was decided as to unsecured credits, whether expressed by notes or existing as bald accounts current, in *Liverpool & London & Globe Ins. Co.* v. *Assessors for the Parish of Orleans*, 221 U. S. 346. *Bonaparte* v. *Tax Court* upheld the power of the State having jurisdiction of the creditor owning the debt to tax him at his domicil upon the maxim *mobilia sequuntur personam,* despite the express tax or exemption from taxation by the State having jurisdiction where the debt was created and the debtor domiciled,

while the Multnomah County and Orleans cases sustained an exercise of the power to tax by the State having jurisdiction of the debtor regardless of what might happen in the State having jurisdiction of the creditor. The more comprehensive power of Congress as to taxation and exemption from taxation of subjects within its jurisdiction as compared with that of a State legislature is pointed out by Taft, J., in an opinion concurred in by Lurton, J., in *Grether* v. *Wright*, 23 C. C. A. 498, 512.

It is manifest from the adjudications by the United States Supreme Court mentioned above that under some circumstances the same property may be taxed to the same person in different jurisdictions without violating any right secured by the federal constitution. Put in other words, these decisions appear to mean that property may have a *situs* in two different jurisdictions for taxation purposes when the nature of the property seems to require or permit it. There may be a difference between bonds and shares of stock as to capacity for independent *situs*. *Blackstone* v. *Miller*, 188 U. S. 189, 206. *Selliger* v. *Kentucky*, 213 U. S. 200, 204. But there appears to be no ground for distinction between shares of stock and accounts current so far as concerns the issues here involved. This principle governs the case at bar. It shows that *Corry* v. *Mayor & City Council of Baltimore*, 196 U. S. 466, is not inconsistent with this result, but that it bears the same relation to the present case as does *Liverpool & London & Globe Ins. Co.* v. *Assessors for the Parish of Orleans* to *Bonaparte* v. *Tax Court*. As was said in *Kidd* v. *Alabama*, 188 U. S. 730, at page 732, by Mr. Justice Holmes, as to taxation between sister States, "it would be a great advantage to the country and to the individual States if principles of taxation could be agreed upon which did not conflict with each other, and a common scheme could be adopted by which taxation of substantially the same property in two jurisdictions could be avoided. But the Constitution of the United States does not go so far."

There is an analogy so far as concerns *situs* between the case at bar and the numerous cases holding that residence of the owner is sufficient ground for the imposition of a succession or inheritance tax upon various kinds of intangible property. *Frothingham* v. *Shaw*, 175 Mass. 59. *Buck* v. *Beach*, 206 U. S. 392. *Wheeler* v. *New York*, 233 U. S. 434.

The principle against double taxation of the same property has no application, because that is confined in operation to such taxation in the same jurisdiction.

Whether it would be wise to make exemptions in cases like the present is not a judicial but a legislative question. *Knight* v. *Boston,* 159 Mass. 551.

It follows from what has been said that the shares of stock are not "property situated in another State and subject to taxation therein." The context in which these words occur in our tax law and its other general provisions demonstrate that these words refer to the kind of property which, if owned by an individual and situated and taxed in another State, would be exempt from taxation here, such as real estate, and "merchandise, machinery and animals." St. 1909, c. 516, § 1. *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194. There are substantial, although intangible, elements of property in shares of stock in a corporation which attach to the owner resident in this Commonwealth.

The general statement in the decisions of many courts and of text writers is to the effect that shares of stock in foreign corporations may be assessed to the owner at the place of his domicil irrespective of taxes which may have been imposed on the corporation itself, even in respect of its capital stock. *Greenleaf* v. *Board of Review,* 184 Ill. 226, 228. *State* v. *Nelson,* 107 Minn. 319, 322. *Appeal Tax Court* v. *Gill,* 50 Md. 377, 396. *Allen* v. *Commonwealth,* 98 Va. 80, 84. *State* v. *Bentley,* 3 Zabr. 532, 542. 27 Am. & Eng. Encyc. of Law, (2d ed.) 928, 929. 37 Cyc. 821, 864, 865.

Our decision upon this branch of the case is supported by direct adjudications upon the same point in *Dyer* v. *Osborne,* 11 R. I. 321, *Worth* v. *Commissioners of Ashe County,* 90 N. C. 409, *Appeal Tax Court* v. *Patterson,* 50 Md. 354, 373, *Judy* v. *Beckwith,* 137 Iowa, 24, 33, *Seward* v. *Rising Sun,* 79 Ind. 351, 353, 354, *Bacon* v. *State Tax Commissioners,* 126 Mich. 22, 29, 30, *Central of Georgia Railway* v. *Wright,* 166 Fed. Rep. 153, 159, appeal dismissed, 215 U. S. 617. See 1 Cooley on Taxation, (3d ed.) 389. Although in some of these opinions the question of the power of the domiciliary State of the corporation to appropriate to itself an exclusive taxation *situs* of the shares of stock was not much discussed, the decisions are clear to the

effect that it cannot do so. The result seems to be supported by *Kidd* v. *Alabama*, 188 U. S. 730, where at page 731 some of these cases are cited with approval. It conforms to the policy of our law touching a kindred point in *Dwight* v. *Boston*, 12 Allen, 316, where it was said at page 322, "our whole system of taxation, as established and practiced, is to disregard the liability of shares in foreign corporations to taxation in the States where they are situated." We are aware of no authorities to the contrary. *Oliver* v. *Washington Mills*, 11 Allen, 268, involved quite different considerations.

The conclusion is, in the opinion of a majority of the court, that as matter of constitutional power the Legislature can impose a property tax upon the shares of stock in a Vermont corporation owned by a natural person resident in this Commonwealth. The exercise of such power does not conflict with constitutional guarantees for equal protection of the laws, full faith and credit to the public acts of other States, nor is it a deprivation of property without due process of law. Of course it does not impair the obligation of any contract, because it is to be inferred that our tax law was in effect long before the acquisition of the stock by the petitioner.

The petitioner contends that its bond of a Vermont corporation is not comprehended within "securities which if owned by a natural person resident in this Commonwealth would be liable to taxation," as these words are used in § 43, cl. 2. Its argument is that such a bond is a debt due to it and that if owned by a natural person resident here who owed money in excess of the value of the bond, as the petitioner does, then such natural person would not be taxed for it. *Hale* v *County Commissioners*, 137 Mass. 111. This argument is fallacious. These words in the statute were not intended to establish the same standard of taxation for a corporation as for an individual. The reference to securities which would be taxable if owned by a natural person is merely for the purpose of determining the taxable character of the securities. *Farr Alpaca Co.* v. *Commonwealth*, 212 Mass. 156, 162. If the securities possess that taxable character, then they are to be taken into account. The debts owed by the petitioner are all considered in determining the fair market value of its shares, provided it makes proper return of them. It is not en-

titled under the excise tax law to have them deducted a second time.

"Securities" is a word of sufficiently broad import to include a bond like that in question. It was said in *Boston Railroad Holding Co.* v. *Commonwealth,* 215 Mass. 493, that "in its ordinary acceptation the word 'securities' includes bonds . . . and other evidences of indebtedness." There is nothing in any part of the tax law to show that it was used in this section in a narrow or constricted sense.

In this respect also no error is shown in the action of the tax commissioner in the determination of the excise tax upon the petitioner.

*Petition dismissed with costs.*

The case was argued at the bar in November, 1914, before *Rugg,* C. J., *Braley, De Courcy, & Crosby,* JJ., and afterwards was submitted on briefs to all the justices.

*R. Y. FitzGerald,* for the petitioner.

*R. S. Hoar,* Assistant Attorney General, for the Commonwealth.